[No. 17506-5-III.   Division Three.   February 11, 1999.]

GARY STONE, ET AL., *Appellants*, v. PROSSER CONSOLIDATED SCHOOL DISTRICT NO. 116, *Respondent.*

*Don W. Schussler* of *Halverson & Applegate, P.S.*, for appellants.

*Jeanie R. Zimmerman* and *William D. Pickett* of *Lyon Weigand & Gustafson*, for respondent.

SCHULTHEIS, C.J. — Josh Stone threatened another student in his Prosser high school and was expelled from school. He and his parents unsuccessfully appealed his expulsion to the school superintendent, the school board and the Benton County Superior Court. On appeal to this court the Stones contend the hearing before the superintendent violated the Washington Administrative Code and constitutional law because they were not allowed to question and confront the witnesses against Josh. We reverse and remand.

On January 9, 1998, Josh reportedly threatened another student with bodily harm. The student reported the incident to Gary Reid, assistant vice-principal at the high school. When interviewed by Mr. Reid, Josh admitted calling the student a "faggot" but denied hitting him on the head or threatening to break his skull. Josh had been suspended six times over the previous two years for incidents involving fighting, harassment or intimidation.

Mr. Reid issued a notice of emergency expulsion on January 12. Josh and his parents asked for a hearing before the

school superintendent, Ray Tolcacher. They received a letter dated January 22 that explained their rights, including those provided by the Washington Administrative Code.[1] WAC 180-40-305(2) provides that:

> The student and his or her parent(s) or guardian(s) shall have the right to:
>
> (a) Inspect in advance of the hearing any documentary and other physical evidence which the school district intends to introduce at the hearing,
>
> (b) Be represented by legal counsel,
>
> (c) Question and confront witnesses,
>
> (d) Present his or her explanation of the alleged misconduct, and
>
> (e) Make such relevant showings by way of witnesses and the introduction of documentary and other physical evidence as he or she desires.

At the hearing held January 27, only Mr. Reid testified for the school district. He related the results of his interviews with Josh, the complaining student and other students who witnessed the incident. The Stones' attorney requested the production of the witnesses for confrontation and cross-examination, but none of the eyewitnesses were called. Mr. Tolcacher made findings and conclusions supporting the emergency expulsion and this decision was appealed to the school board. After the superintendent's decision was affirmed by the board, the Stones petitioned the superior court for the issuance of an alternative writ of mandamus commanding the board to reinstate Josh as a student or to conduct a new hearing on his emergency expulsion. A hearing was held in March 1998 and the trial court denied the motion for a writ of mandamus.

The Stones contend on appeal that WAC 180-40-305(2)(c) and due process guarantee Josh the right to confront and

---

[1] The letter incorrectly cited to WAC 180-40-270, the long term suspension section. This provision guarantees the same rights as WAC 180-40-305, the emergency expulsion section applicable to these facts.

question the witnesses against him. The school district answers that interpreting WAC 180-40-305 to mandate the right to cross-examine adverse witnesses would convert an informal fact-finding hearing into a complicated quasi-judicial procedure that was not intended by the Legislature. It also argues it has no subpoena power to compel student witnesses to testify and asserts anonymity encourages student witnesses to participate in the expulsion process without fear of reprisals.

■■ Due process is a flexible concept calling for those procedural protections demanded by the nature of the interest affected and the context in which the alleged deprivation occurs. *Morris v. Blaker*, 118 Wn.2d 133, 144, 821 P.2d 482 (1992); *Colquitt v. Rich Township High Sch. Dist. No. 227*, 298 Ill. App. 3d 856, 863, 699 N.E.2d 1109, 232 Ill. Dec. 924 (1998) (citing *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)). In looking at the degree of protection afforded in a particular case, the court balances these interests: (1) the significance of the private interest to be protected; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the fiscal and administrative burdens that the additional procedural safeguards would entail. *Mathews*, 424 U.S. at 335; *Morris*, 118 Wn.2d at 144-45. The United States Supreme Court has held that state statutes providing a free public education through high school and compelling a student to attend school confer a property interest that may not be taken away without at least minimum due process procedures.[2] *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975).

In *Goss*, students were suspended for up to 10 days without notice of the charges against them or the opportunity of a hearing. The Supreme Court held that a suspension of up to 10 days is a "serious event" for a child and requires at minimum some kind of notice and a hear-

---

[2]Attendance in Washington public schools is mandatory for children from 8 through 17 years of age, unless the child is enrolled in private school or is home-schooled. RCW 28A.225.010.

ing. *Goss*, 419 U.S. at 576, 579. As the court noted, "The student's interest is to avoid unfair or mistaken exclusion from the educational process, with all of its unfortunate consequences." *Id.* at 579. The court concluded by warning that longer exclusion from school could require more stringent due process protections: "We should also make it clear that we have addressed ourselves solely to the short suspension, not exceeding 10 days. Longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures." *Id.* at 584.

With *Goss* establishing that a student's entitlement to public education is a significant property interest, the remaining questions are what procedures are sufficient to guard against the erroneous deprivation of that interest and how difficult those procedures would be to implement. *Mathews*, 424 U.S. at 335. Expulsion places the student's education interests in jeopardy for a long time. The risk of erroneously expelling a student must, accordingly, be treated seriously. Josh was never allowed to confront or question the only witnesses who actually observed the incident that was the basis for his expulsion. Although an expulsion hearing is not subject to all the rules of evidence, the decision of the hearing officer is based solely on the evidence presented, and the credibility of that evidence is critical to the disposition. *See* WAC 180-40-305; *Colquitt*, 298 Ill. App. 3d at 864.

Citing *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920 (6th Cir. 1988), the school district argues that cross-examination of the witnesses is not as necessary here because the vice-principal interviewed the witnesses and has the experience to determine their truthfulness. In *Newsome*, the expelled student filed a federal action for an injunction to prohibit his expulsion. The hearing examiners denied his request for permission to cross-examine his accusers or even to know their identities. While noting that cross-examination is the principal means by which credibility is tested, the court found that such a process at the

hearing "may often be merely duplicative of the evaluation process undertaken by the investigating school administrator." *Id.* at 924.

■ In response to this argument we should note first that federal law, unlike Washington law, does not provide students the right to confront and question adverse witnesses at the expulsion hearing. *L.Q.A. v. Eberhart*, 920 F. Supp. 1208, 1219 (M.D. Ala. 1996), *aff'd*, 111 F.3d 897 (11th Cir. 1997). Second, it is risky to base an expulsion on hearsay statements bolstered by a school official's testimony that the proponent is reliable. As stated in *Colquitt*, a case with remarkably similar facts, reliance on the official's opinion of the absent witnesses' credibility "is a particularly egregious departure from the adversarial standard." 298 Ill. App. 3d at 865. On balance, the risk that Josh's interests were deprived by the refusal to offer him the opportunity to confront and question the adverse witnesses is compelling. He should have been provided the opportunity to cross-examine unless the burden on the school administration was prohibitive.

This final factor in the determination of proper due process protections—the fiscal and administrative burden on the school district—requires us to ask what effect mandating the opportunity to confront and question witnesses would have on the expulsion process and the school system at large. The school district asserts that compelling student witnesses to testify at expulsion hearings might subject them to reprisals. Further, the school district correctly notes that it does not have subpoena power and cannot hold a witness in contempt for failure to appear. We agree that the flexibility of due process protections allows for the submission of hearsay statements when student witnesses fear violent retaliation or ostracism. *See, e.g.*, *Newsome*, 842 F.2d at 925; *Dornes v. Lindsey*, 18 F. Supp. 2d 1086, 1090 (C.D. Cal. 1998). The school district here offered no explanation why the witnesses did not attend. It simply did not attempt to bring them to the hearing. While it acknowledges Josh's right to question and confront any witnesses

who might choose to attend, it contends the lack of subpoena power and its interest in encouraging vicarious student participation in the process counterbalance Josh's interest in confronting his accusers.

Lack of subpoena power was also raised in the similar cases of *Colquitt* and *Smith v. Miller*, 213 Kan. 1, 514 P.2d 377 (1973). Although the Kansas code did not provide students the right to confront or question witnesses at their expulsion hearings, the Kansas Supreme Court held that cross-examination was "imperative in establishing the truth, absent compelling reasons for dispensing with it." *Smith*, 213 Kan. at 14, 514 P.2d at 387. As the court noted, "[w]hen cross-examination is required the school's interest can be protected by holding the hearing in private and by limiting the scope of cross-examination to prevent the student or his lawyer from badgering witnesses." *Id.* When a witness has good reason not to appear, his or her attendance may be excused. *Id.* At a minimum, the hearing must establish that the school district tried to produce key witnesses and that their failure to appear is excused by fear of reprisal or some other compelling reason. *Colquitt*, 298 Ill. App. 3d at 865-66.

Washington law, unlike Kansas or Illinois law, provides the right to confront witnesses in expulsion hearings. In light of that right, the burden on the school administration to produce the student witnesses or to show that their appearance is not possible or advisable is not onerous enough to justify the risk of erroneously depriving the accused student of his education.

In summary, Josh's substantial interest in attending school and the threat to this interest caused by his lack of opportunity to confront and question the eyewitnesses outweighed the countervailing administrative interest favoring the admission of hearsay statements. *Colquitt*, 298 Ill. App. 3d at 866. Consequently, he was not afforded due process and reversal of the trial court's order is required. The matter is remanded for a hearing complying with WAC 180-40-305 and permitting him to confront and question the adverse witnesses.

Reversed and remanded.

SWEENEY and KATO, JJ., concur.