Cindy **SCOTT, a married woman, Ellen M. Norris, a single woman, and Kent Davis, a single man, Petitioners/Plaintiffs,**

v.

The **CITY OF SEATTLE, a municipal corporation, et al., Respondents/Defendants.**

No. C98–1345R.

United States District Court, W.D. Washington, at Seattle.

Dec. 13, 1999.

---

Josef Diamond, Seattle, WA, Robert C. Rowley, James J. Klauser, Rowley & Klauser, Seattle, WA, for Cindy L. Scott.

Robert C. Rowley, James J. Klauser, Rowley & Klauser, Seattle, WA, for Ellen M. Norris, Kent Davis.

Eleanore S. Baxendale, Seattle City Attorney's Office, Seattle, WA, for City of Seattle.

Gustav George Kostakos, Seattle, WA, for Joel R. Diamond, Julie Diamond.

Michael S. Grossmann, Attorney General's Office, Natural Resources, Olympia, WA, David Scott Grossman, Lesourd & Patten, PS, Seattle, WA, for State of Washington.

ORDER GRANTING IN PART CITY OF SEATTLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND REMANDING OTHER CLAIMS TO STATE COURT

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on defendant City of Seattle's ("City's") motion for partial summary judgment and motion to strike Exhibit C from the declaration of attorney James Klauser and on plaintiffs Davis' and Norris' cross-motion for partial summary judgment and an order in limine. Having considered the papers filed in support of and in opposition to the motions, the court rules as follows:

## I. BACKGROUND

The following facts are not in dispute: Plaintiffs Norris and Davis are owners of floating structures that used to be moored at Joel Diamond's recreational marina on Lake Union.[1] In November of 1997, Diamond received a Notice of Violation ("NOV") from an inspector from the City's Department of Construction and Land Use ("DCLU"), Molly Rice. In the NOV, Rice alleged that the moorage of plaintiffs' structures violated Seattle Municipal Code ("SMC") sections 23.47.004(A) (unauthorized residential use in a commercial zone); 23.60.606(A) (unauthorized residential use in a waterfront Urban Stable environment); and 23.60.090(E)–(G) (locating unauthorized non-water dependent residential floating structure over water). Although Rice provided a physical description of plaintiffs' structures in the NOV, she did not issue NOVs to the plaintiffs because she did not know who they were.[2]

Diamond sought a review of the NOV. Pursuant to SMC 23.90.014, an informal review hearing was conducted by a DCLU review officer in January of 1998. The officer sustained the findings in the NOV and issued a final Land Use Order ("Order"). In July of 1998, the Order was sent by certified mail to Diamond and the plaintiffs. In 1999, plaintiffs left Diamond's marina after Diamond either terminated or refused to renew plaintiffs' lease agreements.

Plaintiffs filed an action[3] in King County Superior Court in September of 1998, requesting (1) declaratory judgment that the Order was void; (2) declaratory judgment that the City acted arbitrarily and capriciously; (3) declaratory judgment that federal law preempts the City's power to regulate the use of plaintiffs' "vessels"; (4) declaratory judgment that plaintiffs' substantive and procedural rights were violated; (5) judgment for damages pursuant to RCW 90.58.230[4] and 42 U.S.C. § 1983 from loss of property and contractual rights and from emotional distress; (6) injunctive relief from enforcement of the Order; (7) a writ of certiorari to review the Order and the administrative process; and (8) costs and attorney's fees.

The City removed the action to this court and filed counterclaims, requesting that the court (1) impose on plaintiffs a civil penalty of $75 per day for violation of the SMC; (2) provide injunctive relief requiring plaintiffs to correct the violations in the NOV; and (3) award costs to the City.

The City now seeks summary judgment on the City's counterclaims for payment of fines and costs against Norris.[5] The City also moves for partial summary judgment on plaintiffs' claims for (1) a writ of certiorari on the Order; (2) declaratory judgment for alleged violations of procedural due process rights; (3) declaratory judgment for alleged violations of substantive due process rights; and (4) damages arising from interference with business contracts.

1. Plaintiff Scott and defendants/cross-claim defendants Joel and Julie Diamond have settled with the City. For that reason, the City's claims against Scott and the Diamonds are now moot as are Scott's claims against the City. Scott does not move for summary judgment against the Diamonds.

2. Rice referred to the plaintiffs as Jane and John Doe in the NOV.

3. Davis also filed a petition (No. 98–2–30744–7) under the Land Use Petition Act ("LUPA"), RCW 36.70C.005 et seq., that is pending before the Superior Court.

4. This statute provides for enforcement under the Shoreline Management Act ("SMA") which is codified at RCW 90.58.010 et seq.

5. Injunctive relief was mooted after plaintiffs left Diamond's marina. SMC 23.90.018 provides that "a cumulative penalty in the amount of Seventy-five Dollars ($75) per day for each violation from the date set for compliance until the order is complied with." In this case, the Order set the last date set for compliance as August 21, 1998, and the Order was complied with when Norris' structure left the marina around January 1999.

Plaintiffs cross-move the court to grant partial summary judgment by dismissing the City's counterclaims and declaring that the City had no jurisdiction to enter a land use order against plaintiffs because of a lack of due process.

## II. DISCUSSION

Summary judgment will be granted if there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Watson v. Perry*, 918 F.Supp. 1403, 1410 (W.D.Wash.1996). In considering a summary judgment motion, the court will view the evidence in the light most favorable to the nonmoving party. *See Western Radio Serv. Co. v. Glickman*, 113 F.3d 966, 969–70 (9th Cir.1997). However, the "mere existence of a scintilla of evidence" in support of plaintiffs' arguments is not enough. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There must be "evidence on which the jury could reasonably find for the plaintiff." *Id.*

Although the parties raise numerous legal issues, the claims all center on whether the City properly applied the SMC to plaintiffs when it issued the NOV and Order. Put simply, plaintiffs assert that the NOV should have been served upon them, that the Order is invalid as applied to them, and that their constitutional rights were violated as a result. The City seeks to enforce the Order and be awarded penalties and costs.

The parties' claims primarily involve the application of state law or local ordinances and are before this court only because of the constitutional issues. After considering the arguments presented by the parties, the court (1) rejects plaintiffs' federal and state constitutional challenges, and (2) finds that the remaining issues are best resolved in state court.

## A. *Due Process*

■ To be entitled to procedural or substantive due process, a party must first show a constitutionally protected liberty or property interest in the benefit for which protection is sought. *See Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir.1994). Plaintiffs can show no protected liberty or property interest, nor can they show violations of procedural and substantive due process even if such interests existed.

### 1. *Property and Liberty Interests*

Plaintiffs contend the Order itself impaired a property interest in their floating structures because they never had an opportunity to challenge the Order prior to its issuance. (*See* Pls.' Resp. to Def.'s Partial Summ.J.Mot. at 21–23.) According to plaintiffs, the issuance of the Order also interfered with other interests: the property interests in their moorage agreements with Diamond and their business of renting out their structures, and the liberty interest in their freedom to rent out their floating structures to others. (*Id.* at 21.)

■ "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Property interests are not created by the Constitution, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* State case law does not support a finding that plaintiffs possessed a property interest.

■ In *Cranwell v. Mesec*, 77 Wash. App. 90, 890 P.2d 491, 502–503 (1995), the Washington Appellate Court examined a due process challenge to the NOV process in the analogous situation of housing ordinances. As is the case here, the NOV in *Cranwell* had become a "final decision." *Id.* at 494–96. The court held that "the mere issuance and filing of the NOV is not

the type of encumbrance that constitutes a significant property interest giving rise to procedural due process."[6] *Id.* at 503. Instead the final NOV was simply notice to the interested parties that a code violation existed. *Id.* As the City points out, plaintiffs here cannot be deprived of a property interest until a court has heard their case and determined that a violation occurred; no encumbrance to their property occurred when the NOV or the Order issued, therefore, there was no deprivation of a substantial property right.

Plaintiffs argue that *Cranwell* is inapplicable because there the housing ordinances afforded a greater opportunity for adjudication on the merits after entry of a final decision than do the procedures challenged here. The court disagrees. The housing ordinances are substantially similar to the ordinances applied here. *Compare* SMC 22.206.220 and 22.206.280 (housing ordinances) *with* SMC 23.90.006 and 23.90.018 (ordinances enforcing land use code). Both schemes provide that the City must bring an enforcement action to collect civil penalties that run from the date set for compliance. *See* SMC 22.206.280; SMC 23.90.018. Both schemes provide that a party subject to the final decision or final order may show mitigation. *See* SMC 22.206.280; SMC 23.90.018. Furthermore, the plaintiffs here could have taken advantage of an additional form of full review through filing a land use petition under LUPA. *See* RCW 36.70C.005 *et seq.*

The court finds that plaintiffs have not established that they were deprived of a constitutionally protected property interest when the City issued the NOV or when the NOV became the Order.

■ Because plaintiffs' other asserted property and liberty interests are dependent upon the effect of the Order, these claims too must fail. Plaintiffs contend that they were entitled to the renewal or non-termination of their moorage lease agreements and that the City interfered with this interest by issuing the Order. First, there is no suggestion from state law or from the lease agreements that plaintiffs are entitled to moorage lease agreements that are renewed into perpetuity. In fact, the agreements provide that Diamond could cancel the leases for any reason by giving 30 days advance notice. (*See* Baxendale Decl., Ex. H (Norris Moorage Lease at ¶ 33); Baxendale Decl., Ex. K (Davis Moorage Lease at ¶ 24).)

Second, there is no indication that the City, by serving the Order upon all the individually interested and responsible parties, interfered with the plaintiffs' contractual rights or business expectancies. The *City* had no control over how Diamond would react to the Order, which essentially served as notice that the City would seek to enforce its ordinances. Diamond could have acted upon an informal suggestion of a violation prior to receiving the NOV, directly after the issuance of the NOV, after issuance of the Order, or after a full adjudication (regardless of the result). Diamond or the plaintiffs could have challenged the Order either through a LUPA petition or during enforcement proceedings. Were the City a private party, plaintiffs' claims for the state tort of interference with a contract or business expectancy would fail on the present record because plaintiffs cannot show that the City interfered for an improper purpose or used improper means; there is no doubt

---

**6.** Similarly, in *Kraebel v. Michetti*, 1994 WL 455468 (S.D.N.Y. Aug.22, 1994), a plaintiff alleged that her due process rights had been violated when a New York City agency notified her of 31 housing code violations, all of which subjected her to fines whenever the agency chose to enforce them. The Southern District of New York noted: "The Court cannot conceive of how [the agency's] mere identification and reporting of violations, without taking actions to impose a penalty, could amount to a deprivation of plaintiff's property. Plaintiff does not have any entitlement to an unblemished housing code record, and an unblemished record is all that [the agency has] arguably deprived her of at this point in time." *Id.* at *3.

that Diamond was properly served and was responsible for any violations of the City ordinances.[7]

Allowing plaintiffs' claims under these circumstances would constitutionalize the premise that a local jurisdiction, in giving notice of a violation, interferes with the contracts or business expectancies of any person affected by such notice. Such a conclusion is unwarranted. "The Due Process Clause does not, by its own force, extend individuals a right to be free of injury wherever a state is characterized as the tortfeasor. The Fourteenth Amendment is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States.'" *Johnson v. Barker,* 799 F.2d 1396, 1399 (9th Cir.1986) (quoting *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)) (declining to use state tort law standards to analyze claimed due process violation).

Because plaintiffs have no cognizable property interests in being free from the Order or in moorage agreements renewed in perpetuity, they also have no liberty interest in continuing to run a business requiring moorage in Diamond's marina. *See, e.g., Greenwood v. Federal Aviation Admin.,* 28 F.3d 971, 976 (9th Cir.1994) (holding that because pilot examiner had no property interest in renewal of pilot examiner designation ("PED"), he had no liberty interest in choice of occupation requiring use of PED); *Dorfmont v. Brown,* 913 F.2d 1399, 1403 (9th Cir.1990) (holding that because plaintiff had no cognizable property interest in security clearance, she had no liberty interest in employment requiring such clearance).

Without a cognizable property or liberty interest, plaintiffs do not even arrive at the threshold of a procedural and substantive due process violation.

### 2. *Procedural Due Process*

■ Moreover, the court notes that, even if there were some form of constitutionally protected property interest asserted here, which there is not, plaintiffs still could not prevail. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citation omitted); *see also Stone v. Prosser Consol. Sch. Dist. No. 116,* 94 Wash.App. 73, 971 P.2d 125, 126 (1999). To determine whether plaintiffs' procedural due process rights were violated, the court considers three factors: (1) the significance of the private interest to be protected; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional procedural safeguards would entail. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893; *see Stone,* 971 P.2d at 126.

■ Plaintiffs contend that because they were denied the opportunity to be heard at the NOV review that Diamond requested, they were denied procedural due process. The City argues that the informal hearing resulting from Diamond's request for a review of the NOV was not quasi-judicial and, therefore, plaintiffs' lack of notice of the informal hearing did not deprive them of due process. Furthermore, the City notes that plaintiffs had other opportunities to challenge the application and enforcement of the ordinances.

---

**7.** A claim for tortious interference with a contractual relationship or a business expectancy requires five elements: (1) existence of valid contractual relationship or business expectancy; (2) defendants' knowledge of that relationship; (3) intentional interference inducing or causing breach or termination of relationship or expectancy; (4) defendants' interference for an improper purpose or use of improper means; and (5) resultant damage. *Leingang v. Pierce County Med. Bureau, Inc.,* 131 Wash.2d 133, 930 P.2d 288, 300 (1997) (en banc).

The ordinance governing the NOV review states:

> Any person significantly affected by or interested in a notice of violation issued by the Director pursuant to Section 23.90.006 may obtain a review of the notice by requesting such review within fifteen (15) days after service of the notice....
>
> .... The review will consist of an *informal review meeting* held at the Department. A representative of the Director who is familiar with the case and applicable ordinances will attend. The Director's representative will explain the reasons for the Director's issuance of the notice and will listen to any additional information presented by the persons attending.

SMC 23.90.014(A)–(B) (emphasis added). The Director will then issue a final order. SMC 23.90.014(C).

Even presuming *arguendo* that plaintiffs could show a property interest protected by the constitution, there is no risk that they were deprived of that interest through the procedures used.[8] The "informal review meeting" did not trigger judicial review; the Order did. Plaintiffs clearly were served with the Order and, once served, they had the right to file a petition for review of that Order under LUPA within twenty-one days of three days after the written decision was mailed. *See* RCW 36.70C.040(2)–(4). Plaintiffs' arguments about who properly received the original NOV are, therefore, irrelevant.[9] In addition to such review, enforcement of the Order for civil penalties cannot occur without the filing of a civil action against plaintiffs. *See* SMC 23.90.018. In such a civil action, plaintiffs would be able to present evidence mitigating their liability.

*Id.* (violator may show full or partial mitigation of liability).

Furthermore, it is obvious that the City has a clear interest in the NOV process and the enforcement of its ordinances in an expeditious and fundamentally fair manner. The court, therefore, finds that plaintiffs have not been deprived of procedural due process rights under the federal or state constitutions.

### 3. Substantive Due Process

■ Plaintiffs argue that the City violated their substantive due process rights by imposing requirements not included in the ordinances and undertaking an investigation without receiving complaints. To establish a violation of substantive due process, the plaintiffs must show that the City deprived their liberty or property interests in such a way that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles,* 147 F.3d 867, 871 (9th Cir.1998); *see also Robinson v. City of Seattle,* 119 Wash.2d 34, 830 P.2d 318, 334 (1992) (en banc). Presuming again *arguendo* that plaintiffs could show some protected interest, they still cannot prevail.

■ Plaintiffs first contend that the City improperly imposed requirements not included in the ordinances, but fail to specify just what those requirements are. To the extent that they assert that the City should not have cited their floating structures because they qualify as "vessels" not subject to the City's regulations, plaintiffs fail to show how the City's application of the ordinances to their floating structures shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

---

**8.** Plaintiffs allude to a facial challenge to the City's ordinances, but fail to specify which ordinances they challenge and how these ordinances render LUPA inapplicable. The court rejects plaintiffs' facial challenge claim.

**9.** The court thus also rejects plaintiffs' ancillary argument that they did not receive adequate notice of a violation from the Order because the NOV was referenced therein but not actually attached. The Order clearly notes that a violation had occurred and provided a contact from whom to receive further information. (*See* Rice Decl., Ex. F.)

Vessels are defined as "ships, boats, barges, or any other floating craft which are *designed and used for navigation.*" SMC 23.60.942 (emphasis added). Plaintiffs argue that their structures are vessels under the plain meaning of the ordinance. The City counters that plaintiffs' structures are not "used in navigation."

The court is guided by two principles of statutory construction. First, the court must liberally interpret the SMC to give full effect to the objectives and purposes of the state SMA. *See* SMC 23.60.012. The state SMA "finds that ever increasing pressures of additional uses are being placed on the shorelines necessitating increased coordination in the management and development of the shorelines of the state." RCW 90.58.020. Second, the court must give great weight to an administrative agency's interpretation of a statute unless the court finds a "compelling indication that such interpretation conflicts with the legislative intent." *Washington Water Power Co. v. Washington State Human Rights Comm'n.*, 91 Wash.2d 62, 586 P.2d 1149, 1153 (1978).

The City's interpretation appears to promote the coordinated management of shorelines by narrowing the category of structures that are exempt from the SMA. Furthermore, the DCLU uses a number of factors to determine if a structure is a vessel.[10] (*See* Director's Rule 27–88 att. to Fourth Baxendale Decl., Ex. E.) Although the court will not rule as to whether this is the proper reading of the ordinance, such a reading certainly falls short of being constitutionally shocking.

Plaintiffs' assertions that Rice received no complaints before targeting their structures or that Rice collaborated against them with other government agencies is not borne out by the record. Rice received at least one letter from a private group and several phone calls about the issue of house barges on Lake Union. (*See* Rice Decl., Ex. A; Third Rice Decl. at ¶ 3 and Ex. A.) Plaintiffs fail to establish a substantive due process claim under the federal or state constitutions.

## C. Equal Protection

■■ Plaintiffs allege that the City discriminated against them because their floating structures have square-shaped hulls. Since this claim does not involve a fundamental right or a suspect classification, plaintiffs bear the burden of proving an uneven application of the law under the rational basis test.[11] *See McQueary v. Blodgett*, 924 F.2d 829, 835 (9th Cir.1991); *see also DeYoung*, 960 P.2d at 922–23.

Plaintiffs fail to demonstrate that the City unevenly applied its ordinances to their square-hulled structures. Rice's duties included conducting investigations based on citizen complaints, and the record contains a letter expressing concern about the proliferation of house barges. (*See* Rice Decl., Ex. A.) The City has also produced Rice's telephone logs showing calls about house barges. (*See* att. to Third Rice Decl.; Rice Decl., Ex. A.) Rice not only took into account the shape of plaintiffs' structures, but also "their apparent residential use, their lack of apparent navigation, and the absence of housebarge registration numbers." (Rice Decl. at ¶ 5.) In contrast, plaintiffs offer only unsubstantiated assertions in their briefing that Rice's predecessor made comments to the plaintiffs that left the impression that DCLU inspectors unevenly apply the shoreline ordinances. The court finds that plaintiffs have failed to establish that their equal

---

10. In contrast, plaintiffs' interpretation would make any floating structure a vessel so long as it had means of propulsion and steering; even a floating home could qualify as a vessel with the addition of several outboard motors and a small rudder.

11. If plaintiffs can do so, the City would then be required to demonstrate a rational basis for treating plaintiffs differently from other property owners. *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir.1990); *DeYoung v. Providence Med. Ctr.*, 136 Wash.2d 136, 960 P.2d 919, 923 (1998).

protection rights have been violated under the either the state or federal constitution.

### D. *Constitutional Interference with Contract*

■ Plaintiffs allege that the City interfered with their right to contract with Diamond by improperly issuing the NOV. The Contract Clause in the U.S. Constitution states that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. Art. 1, § 10. While "[i]t has long been established that the Contract Clause limits the power of the States to modify their own contracts as well as to regulate those between private parties," the Supreme Court has stated that "[t]he States must possess broad power to adopt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed, as a result. Otherwise, one would be able to obtain immunity from state regulation by making private contractual arrangements." *United States Trust Co. v. New Jersey,* 431 U.S. 1, 17, 22, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); *see also Tyrpak v. Daniels,* 124 Wash.2d 146, 874 P.2d 1374, 1377 (1994) (en banc) (noting that Contract Clause of United States Constitution is co-extensive with contract clause of Washington State Constitution).

Even assuming that the City's actions resulted in Diamond's decision not to renew their leases, the City must be allowed to adopt ordinances that support the SMA despite the secondary effects on the private contracts here. The City's enforcement of its ordinances did not violate the Contract Clause of the Constitution or its state counterpart.

### E. *Remand of State Claims*

The court has determined that the following questions of federal and related state constitutional law raised by plaintiffs are without merit: procedural due process, substantive due process, equal protection, and the Contract Clause. Plaintiffs' remaining claims all center on state and local law.

■ Dismissal of federal claims does not necessarily deprive the court of power to adjudicate remaining state claims. *See Nishimoto v. Federman–Bachrach & Assoc.,* 903 F.2d 709, 715 (9th Cir.1990). In determining whether to adjudicate such claims, the court must consider and weigh such factors as judicial economy, convenience, fairness, and comity. *Id.*

■ In the interests of judicial economy and comity, the court declines to adjudicate plaintiff's remaining state and local claims. The court instead remands these issues to the state court. Judicial economy is served by remand because Davis' LUPA proceeding is pending in state court. Comity will be served by permitting state courts to adjudicate city ordinances of vital local concern. State courts traditionally address these ordinances through the specialized LUPA process and are, therefore, familiar with the state and local administrative scheme. The court finds that similar reasoning applies with equal force to the City's counterclaims for penalties and dictates remand of those counterclaims.

### III. CONCLUSION

The court GRANTS in part the City's motion for partial summary judgment and DENIES partial summary judgment to plaintiffs. The court remands to the King County Superior Court plaintiffs' remaining state and local claims and the City's counterclaims. The court strikes all motions in limine as moot. The court found Exhibit C of the Klauser Declaration to be relevant to plaintiffs' assertions and, therefore, denies the City's motion to strike it and those portions of plaintiffs' brief relying upon it.