[No. 55704-1-I.  Division One.  May 1, 2006.]

JEFFREY TAYLOR, *as Parent and Guardian, Appellant*, v. ENUMCLAW SCHOOL DISTRICT No. 216, *Respondent*.

_____

*Tyler K. Firkins* (of *Van Siclen Stocks & Firkins*), for appellant.

*Dan L. Johnson* and *Jerret E. Sale* (of *Bullivant Houser Bailey, P.C.*), for respondent.

¶1 AGID, J. — Jeffrey Taylor, on behalf of his son Zachary Taylor, appeals the trial court's order granting summary judgment in favor of the Enumclaw School District (District) on his 42 U.S.C. § 1983 claim. Mr. Taylor argues that Zachary has a property and liberty interest in participating in interscholastic sports. When the District imposed academic and athletic suspensions, he contends they violated Zachary's Fourteenth Amendment rights by depriving him of his right to confront his accusers, examine and cross-examine witnesses, and review the evidence against him. In order to prevail on a § 1983 claim, Zachary must prove that the District deprived him of a constitutional right. Because students do not have a property or liberty interest in participation in interscholastic sports, Zachary cannot establish a violation of his civil rights. We affirm the trial court.

## FACTS

¶2 On October 23, 2002, Enumclaw High School Principal Terry Parker received telephone calls from parents telling him that several underage students, including school athletes, were drinking at a posthomecoming dance. Principal Parker, Athletic Director Tim Tubbs, and Safe and Civil Schools Director Randy Gallatin interviewed numerous students about the party. During this investigation, they learned that Zachary Taylor was one of the students drinking at the party.

¶3 After the November 1, 2002 football game between Enumclaw and Sumner High School, Head Football Coach Mike Ernaga told Athletic Director Tubbs he had received reports that there were Enumclaw football players under the influence of alcohol during the game. Over the next two days, Principal Parker, Assistant Principal Ann Baker, and Athletic Director Tubbs interviewed several football players, including Zachary Taylor and two other players suspected of consuming alcohol.

¶4 On Thursday of the same week, Sumner Head Football Coach Keith Ross attended the Enumclaw football game against Kentridge. During the game, Coach Ross told Tubbs that one of Sumner's players said Zachary was under the influence of alcohol during the preceding week's game. Principal Parker got a written statement from a Sumner football player about his observations of Zachary's behavior, including a statement that he smelled alcohol on Zachary during and after the game. Principal Parker reinterviewed a number of football players about the football game and possible athletic code violations.

¶5 On November 4, 2002, security staff member Cindy Turner notified Principal Parker that she saw an alcohol container in the car parked in Zachary's parking space. Principal Parker then went to the car, where he saw a Coors Light beer box in the back seat. He contacted Safety Director Gallatin and asked him to conduct a search of Zachary's car with both Zachary and a police officer present. Zachary confirmed it was his car, consented to the search, and opened the car door. They found an empty Coors Light beer box, an empty package of Swisher Sweet cigars, and a closed clear plastic drink bottle containing tobacco residue and spit. Zachary told Gallatin that he "heard someone had put a beer box in his car that morning."

¶6 On November 5, Zachary received a 10-day academic suspension for violating Enumclaw High School policy by drinking alcohol as a member of the football team at the November 1 game. The District told him five days of his suspension could be deferred and withdrawn if he com-

pleted an alcohol assessment program. Zachary appealed his suspension.

¶7 On November 6, the Athletic Board met with Zachary. It found his use of alcohol was conduct unbecoming an athlete that violated the Athletic Code. It scheduled a hearing to determine appropriate athletic-related sanctions and sent a letter to Zachary's father summarizing its findings and sanctions.[1] Zachary appealed.

¶8 On November 18, Zachary and Mr. Taylor met with Principal Parker for an informal grievance conference to discuss Zachary's appeal of his academic suspension and athletic sanctions. At this meeting, Principal Parker provided them with copies of the following documents:

(1)  Letter from Athletic Director Tubbs specifying the athletic sanctions imposed by the Athletic Board.

(2)  A summary of general evidence/information prepared by Principal Parker.

(3)  Statement of Safety Director Gallatin about the search of Zachary's car on November 4.

(4)  Short-term suspension letter.

(5)  Zachary's appeal note.

(6)  List of names, provided by Zachary, of people who would testify that he did not drink on the date in question.

(7)  Zachary's signed Athletic Eligibility card.

Principal Parker upheld the academic suspension and the athletic sanctions but stayed the academic suspension until the appeals were exhausted. He also told them the athletic sanction could not be addressed until the Athletic Board had concluded the necessary hearings on the matter.

¶9 At Mr. Taylor's request, the Athletic Board held a hearing to address the November 4 search of Zachary's car and a final disciplinary hearing. At the final disciplinary hearing, the Athletic Board found that Zachary violated the

---

[1] Zachary's sanctions for the three violations included (1) suspension from one football game (already served), (2) suspension from five wrestling matches, (3) forfeiture of his football letter and related individual honors, and (4) recommendation for alcohol evaluation and treatment.

Athletic Code by (1) consuming/possessing alcohol on October 19, 2002, (2) consuming alcohol on November 1, 2002, and (3) using/possessing tobacco on November 4, 2002. On November 22, the Athletic Board sent a letter to Mr. Taylor summarizing its findings and conclusions.

¶10 On November 26, Enumclaw School District Hearing Officer Ron Swanson upheld the academic suspension and athletic sanctions. He also recommended that Zachary return to active sports participation by mid-December 2002 and expedited his appeal hearing on the academic suspension so Zachary could become eligible for sports more quickly.

¶11 On December 16, the Enumclaw School District Board of Directors held a hearing to review the actions of the school board. It found that Zachary received appropriate sanctions given the multiple violations and that the process used to impose athletic discipline followed the regulations and procedures used for short-term academic suspensions.

¶12 On June 13, 2003, Jeffrey Taylor, on behalf of his minor son Zachary, filed a complaint against the District alleging (1) denial of due process under 42 U.S.C. § 1983, the Fourteenth Amendment, and article I, section 3 of the Washington Constitution; (2) negligence; (3) unlawful search and seizure; (4) negligent supervision; and (5) defamation, libel, and slander. On April 16, 2004, the trial court granted the District's motion for summary judgment.

DISCUSSION

¶13 We review summary judgment orders de novo, engaging in the same inquiry as the trial court.[2] Summary judgment is proper if there is no genuine issue of material

---

[2] *Bank of Am. N.T. & S.A. v. David W. Hubert, P.C.*, 153 Wn.2d 102, 111, 101 P.3d 409 (2004) (citing *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 630, 71 P.3d 644 (2003)).

fact and the moving party is entitled to a judgment as a matter of law.[3] The trial court should grant summary judgment only if, after reviewing all the evidence, a reasonable person could reach but one conclusion.[4] We consider all facts and reasonable inferences from them in the light most favorable to the nonmoving party.[5] Mere assertions that there is a genuine material issue will not defeat a summary judgment motion.[6]

## I. *Standing*

¶14 The District contends Mr. Taylor lacks standing because Zachary turned 18 while the lawsuit was pending. It also asserts Mr. Taylor cannot maintain this action as a third party or as an action on his own behalf because he has no separate interest in the claims. Mr. Taylor argues he has standing to bring this suit on Zachary's behalf because the suit was originally brought when Zachary was a minor. He also argues the District cites no authority to support either of its arguments.

¶15 Because minors are unable to pursue an action on their own until adulthood, RCW 4.08.050 permits guardians to bring suits on behalf of their minor children. Mr. Taylor was authorized to sue as Zachary's guardian because Zachary was a minor at the time. While it would have been preferable to substitute Zachary under RAP 3.2, we decline to dismiss on this basis.

## II. *42 U.S.C. § 1983*

¶16 Zachary asserts the District violated his Fourteenth Amendment due process rights because it deprived him of

---

[3] CR 56(c); *Bank of Am.*, 153 Wn.2d at 111.

[4] *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000) (citing *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993)).

[5] *Id.*

[6] *Id.* (citing *White v. State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997)).

his right to confront his accusers, examine and cross-examine witnesses, and review the evidence against him in the athletic discipline hearings. He argues participation in interscholastic sports gives him a protected interest because athletics and other extracurricular activities are an integral part of the total educational process. Because students have a property interest in education that is protected by due process, he contends athletics are an integral part of a whole education and he had a reasonable expectation that he would not be arbitrarily or unfairly denied the opportunity to participate. The opportunity to participate in interscholastic athletics is particularly important to him because as an otherwise average student, he depended on excelling in high school sports to attend college on a football scholarship.

¶17 The District argues participation in an athletic program is a privilege, not a property or liberty interest, and no Washington or federal court has ever held there is a fundamental right to engage in interscholastic sports. It contends Zachary's desire to receive a college scholarship based on a high school athletic career is a "unilateral expectation" or an "abstract need or desire" that does not give rise to a property interest protected by the Fifth and Fourteenth Amendments.[7]

¶18 To assert a claim under 42 U.S.C. § 1983,[8] Zachary must first establish that a person acting under color of state law deprived him of a federal constitutional or

---

[7] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d. 548 (1972).

[8] 42 U.S.C. § 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

statutory right.[9] He must then present evidence establishing gross negligence, recklessness, or deliberate indifference.[10]

### III. *Property Interest in Participating in Interscholastic Sports*

■ ¶19 The threshold question, then, is whether there is a property or liberty interest at stake. The sources of a legitimate claim of entitlement in Washington include rights based on statutes or rules securing certain benefits under state law.[11] Property interests may arise when recipients of a government benefit have a "legitimate claim of entitlement."[12] Whether a student in Washington has a property or liberty interest in participating in interscholastic sports is an issue of first impression. The United States Supreme Court has characterized the hallmark of property as "an individual entitlement grounded in state law, which cannot be removed except 'for cause.' "[13]

■ ¶20 Attendance in Washington public schools is mandatory for children 8 to 17 years of age, unless a child is enrolled in private school or is home schooled.[14] While students do not have a federal constitutional right to an education, a property interest in public education arises

---

[9] *Lesley v. Dep't of Soc. & Health Servs.* 83 Wn. App. 263, 278, 921 P.2d 1066 (1996) (citing *Robinson v. City of Seattle*, 119 Wn.2d 34, 58, 830 P.2d 318, *cert. denied*, 506 U.S. 1028 (1992)), *review denied*, 131 Wn.2d 1026 (1997).

[10] *Peterson v. Littlejohn*, 56 Wn. App. 1, 14-15, 781 P.2d 1329 (1989) (citing *Wood v. Ostrander*, 851 F.2d 1212, 1214 (1988), *reh'g granted and opinion modified by* 879 F.2d 583 (9th Cir. 1989), *cert. denied*, 498 U.S. 938 (1990)).

[11] *Conard v. Univ. of Wash.*, 119 Wn.2d 519, 528-29, 834 P.2d 17 (1992), *cert. denied*, 510 U.S. 827 (1993); *Meyer v. Univ. of Wash.*, 105 Wn.2d 847, 853, 719 P.2d 98 (1986).

[12] *Roth*, 408 U.S. at 577.

[13] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982) (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12, 98 S. Ct. 1554, 56 L. Ed. 2d 30 (1978)).

[14] RCW 28A.225.010.

because students within this age range are required to attend public schools.[15]

¶21 Interscholastic athletics and extracurricular activities are operated through the Washington Interscholastic Athletic Association (WIAA) under RCW 28A.600.200, a nonprofit organization that regulates interscholastic athletics at 385 secondary schools. The WIAA handbook emphasizes "interscholastic activities as an integral part of the total educational process."

¶22 Washington courts have held there is no fundamental right to engage in interscholastic sports.[16] And, participation in interscholastic sports is not a constitutionally protected property interest.[17] While courts recognize education as a broad and comprehensive concept,[18] most cases applying *Goss v. Lopez* have not extended its holding to each component of the educational process.[19] Although participation in extracurricular activities, including sports, clearly supplements and enriches a student's educational experience, neither sports nor any other extracurricular activity is required for graduation or mandated by state law. As such, the rationale of *Goss* does not apply to interscholastic sports.[20] We hold that participation in interscholastic sports is a privilege, not a protected property or liberty interest arising under Washington law.

---

[15] *Goss v. Lopez*, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (public school students have a property interest in education subject to protection under the due process clause, even though education is not a constitutional right).

[16] *Fusato v. Wash. Interscholastic Activities Ass'n*, 93 Wn. App. 762, 768, 970 P.2d 774 (1999) (citing *Darrin v. Gould*, 85 Wn.2d 859, 873, 540 P.2d 882 (1975)).

[17] *Albach v. Odle*, 531 F.2d 983, 985 (10th Cir. 1976).

[18] *See Wooten v. Pleasant Hope R-VI Sch. Dist.*, 139 F. Supp. 2d 835 (W.D. Mo. 2000), *aff'd*, 270 F.3d 549 (8th Cir. 2001).

[19] 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). *See, e.g., Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996); *see also Albach*, 531 F.2d at 985.

[20] *See, e.g., Seamons*, 84 F.3d at 1235 ("We have interpreted *Goss* to speak only in general terms regarding the 'educational process.' . . . [T]he innumerable separate components of the educational process, such as participation in athletics and membership in school clubs, do not create a property interest subject to constitutional protection." (citing *Albach*, 531 F.2d at 985)).

## IV. *Summary Judgment*

¶23 Because Zachary did not have a constitutional or statutory right to participate in interscholastic sports, the trial court did not err by granting summary judgment in favor of the District on his 42 U.S.C. § 1983 claim.

■ ¶24 We reject Zachary's argument that the trial court erred by not examining the adequacy of the District's procedural protections under the *Mathews* test.[21] In order for the *Mathews* test to apply, there must be a risk of erroneous deprivation of a known right.[22]

■ ¶25 The Supreme Court's holding in *Goss* requires that schools provide minimum due process protections when suspending a student, even for a short time, to assure that their decisions are not arbitrary.[23] WAC 180-40-255 defines the grievance procedures for short-term academic suspensions.[24]

■ ¶26 Here, the District provided Zachary with more process than was required under the circumstances when it applied the WAC 180-40-255 process for short-term academic suspensions to the athletic sanction hearings. Contrary to Zachary's argument, it was not required to provide him with process equivalent to that provided for an expulsion simply because he received both an academic suspen-

---

[21] Under *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the sufficiency of due process is determined by applying a three part test. This test balances, first, the private interest affected by the government action; second, the risk of erroneous deprivation of that private interest; and third, the government's interest, including the burden that additional procedural safeguards would entail.

[22] *Id.* at 333.

[23] *Goss*, 419 U.S. at 576.

[24] WAC 180-40-255 requires the school district to follow this procedure when suspending a student for a short term: (1) oral or written notice of the alleged misconduct, (2) an oral or written explanation of the evidence in support of the allegations, (3) oral or written explanation of the corrective action or punishment which may be imposed, and (4) an opportunity for the student to present his or her explanation. If the suspension lasts more than one calendar day, parents or guardians are to be notified of the reason and duration of the suspension as well as the student's right to an informal conference. A written report must also be submitted to the superintendent of the school district within 24 hours after the suspension is imposed explaining the reasons for the suspension.

sion and athletic sanctions.[25] Because participation in interscholastic sports is not a protected interest, the process Zachary received was adequate. The *Mathews* test does not apply to the process used by the District to impose athletic discipline upon Zachary.[26]

¶27 Summary judgment was properly granted.

¶28 We affirm.

SCHINDLER, A.C.J., and COLEMAN, J., concur.

Motion for reconsideration granted in part and opinion amended June 1, 2006.

---

[25] *See Stone v. Prosser Consol. Sch. Dist. No. 116*, 94 Wn. App. 73, 971 P.2d 125 (1999).

[26] *Id.* at 76 (citing *Mathews*, 424 U.S. at 334).

