IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BELLEVUE ATHLETES ALUMNI GROUP, An Association of Members, | ) ) ) | No. 78133-2-I |
| Appellant, | ) ) ) | DIVISION ONE ´ |
| v. | ) ) ) | UNPUBLISHED OPINION |
| BELLEVUE SCHOOL DISTRICT NO. 405, a public school district; and WASHINGTON INTERSCHOLASTIC ACTIVITIES ASSOCIATION, a Washington nonprofit corporation, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) | FILED: September 3, 2019 |

HAZELRIGG-HERNANDEZ, J. — Bellevue Athletes Alumni Group seeks reversal of a dismissal for failure to state a claim upon which relief could be granted. Dismissal is appropriate under CR 12(b)(6) when an "insuperable bar to relief" is evident from the pleadings. Because Bellevue Athletes Alumni Group was not an aggrieved party, the members lack standing to appeal the Washington Interscholastic Activities Association's decision. We affirm.

FACTS

Bellevue High School (BHS) is a member of Bellevue School District, which in turn is a member of the Washington Interscholastic Athletic Association (WIAA). In response to a Seattle Times story that raised questions about the integrity of the BHS football program, the Bellevue School District requested that the WIAA

investigate the program's alleged rule violations. The investigators published a report in April 2016, in which they concluded that "the actions of BHS coaches, the deliberate ignorance of District and BHS administrators, and the complicity of the Bellevue Wolverine Football Club ('Booster Club') and its members[] have unfairly tilted the football field in favor of the Bellevue High School football program to the obvious detriment of opponents." They also found that BHS and District administrators knew or should have known of the WIAA rules violations but chose not to take appropriate action. In response to these findings, the WIAA forbade the BHS football program from participating in post-season play for two years.

In May 2017, BHS self-reported additional rules violations in the track and field program to the WIAA. As a result, the WIAA vacated the school's 2015 state track championship title. In September 2017, BHS asked the WIAA to reconsider the decision banning the football team from post-season play. The WIAA lifted the ban, making the football team eligible for the 2017 post-season, but imposed substitute penalties, including vacation of the school's 2012, 2013, and 2014 state football playoff finishes.

The Bellevue Athletes Alumni Group (collectively, the Group) appealed the WIAA's decision to the superior court under RCW 28A.645.010. The Group is composed of 12 named former students who attended BHS during the 2012, 2013, or 2014 football seasons, or the 2015 track season. Bellevue School District moved to dismiss the appeal under CR 12(b)(6), arguing that neither the Group nor the individual students qualified as aggrieved persons under RCW 28A.645.010 and therefore lacked standing to file an action under the statutory

procedure. The District also argued that the appeal of the decision vacating the 2015 state track title was untimely. The trial court dismissed all claims brought by the Group against the District and the WIAA under Chapter 28A.645 RCW with prejudice.

DISCUSSION

I.    Standard of Review

A trial court may dismiss a complaint if the pleading fails to state a claim upon which relief can be granted. CR 12(b)(6). Under CR 12(b)(6), a court is justified in dismissing a complaint "if it appears beyond doubt that the plaintiffs cannot prove any set of facts that would justify recovery." Handlin v. On-Site Manager Inc., 187 Wn. App. 841, 845, 351 P.3d 226 (2015) (quoting Tenore v. AT & T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998), cert. denied, 525 U.S. 1171, 119 S. Ct. 1096, 143 L. Ed. 2d 95 (1999)). Dismissal is appropriate "only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Nissen v. Pierce County, 183, Wn.2d 863, 872, 357 P.3d 45 (2015) (quoting Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988)).

If "matters outside the pleading are presented to and not excluded by the court" on a motion to dismiss for failure to state a claim, "the motion shall be treated as one for summary judgment." CR 12(b). However, if the contents of the additional documents are alleged in the complaint but not physically attached to that pleading or if the "'basic operative facts are undisputed and the core issue is one of law,' the motion to dismiss need not be treated as a motion for summary

judgment." Trujillo v. Northwest Trustee Services, Inc., 183 Wn.2d 820, 827 n.2, 355 P.3d 1100 (2015) (quoting Ortblad v. State, 85 Wn.2d 109, 111, 530 P.2d 635 (1975)). Because the parties do not dispute the underlying facts and the core issue is purely legal, we do not treat the motion to dismiss as a motion for summary judgment.

We review an order granting a motion to dismiss de novo. Hoffer, 110 Wn.2d at 420. On review, we presume that the factual allegations in the complaint are true, but we are not required to accept any legal conclusions as correct. Haberman v. Wash. Pub. Power Supply Sys., 109 Wn.2d 107, 120, 744 P.2d 1032 (1987).

II.    Standing

The Group contends that the trial court erred in dismissing the appeal because the members of the Group were aggrieved parties entitled to appeal under RCW 28A.645.010.

When analyzing statutory language, our objective is to ascertain and carry out the legislature's intent in enacting the statute. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 9, 43 P.3d 4 (2002). If the meaning of the statute is "plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Id. at 9-10. To determine the plain meaning of a statute, we consider "the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole." Columbia Riverkeeper v. Port of Vancouver USA, 188 Wn.2d 421, 432, 395 P.3d 1031 (2017). If the statute remains

susceptible to more than one reasonable interpretation after we complete this inquiry, it is ambiguous, and we may turn to principles of statutory construction, legislative history, and relevant case law to determine the legislature's intent. Cockle v. Dep't of Labor and Indus., 142 Wn.2d 801, 808, 16 P.3d 583 (2001).

School district boards of directors have the authority to "control, supervise and regulate the conduct of interschool athletic activities." RCW 28A.600.200. Subject to certain conditions, a board may delegate this authority to the WIAA. Id. The WIAA may impose appropriate, proportional penalties for rules violations on coaches, district or school administrators, and students. RCW 28A.600.200(3). However, the WIAA may only impose penalties on students when the students knowingly violated the rules or when "a student gained a significant competitive advantage or materially disadvantaged another student through a rule violation." RCW 28A.600.200(3)(b). The most recent act amending this statute included a statement of intent that is now codified as an official note to the statute:

> The legislature finds that the mission of the Washington interscholastic activities association is to assist member schools in operating student programs that foster achievement, respect, equity, enthusiasm, and excellence in a safe and organized environment. The legislature intends to ensure that this mission is successfully carried out so that arbitrary sanctions that result in students unfairly being denied to participate or cause students' achievements to be diminished do not occur. It is the intent of the legislature to impact the association's current processes for establishing penalties for rules violations and to redefine the scope of penalties that are permitted to be imposed. It is further the intent of the legislature to build protections into state law so that punishment, when necessary, is meted out to the appropriate party and in a proportional manner. The legislature further intends to ensure that state and local rules relating to interschool extracurricular activities be consistent with one another, promote fairness, and allow for a clear process of appeal.

Laws of 2012, ch. 155, § 1. Any decision of the WIAA resulting in a penalty is considered a decision of the school district "conducting the activity in which the student seeks to participate or was participating" and may be appealed as such to the WIAA through RCW 28A.600.205 or to the superior court through RCW 28A.645.010. RCW 28A.600.200(3)(d).[1]

Judicial appeals of school board decisions are governed by RCW 28A.645.010, which allows "[a]ny person, or persons, either severally or collectively, aggrieved by any decision or order of any school official or board" to appeal the decision in superior court. The primary issue before us turns on the definition of the word "aggrieved" in this statute. The term is not defined in Chapter 28A.645 RCW or Chapter 28A.600 RCW. In a general legal context, an "aggrieved party" is defined as "[a] party entitled to a remedy; esp., a party whose personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment." Party, Black's Law Dictionary (11th ed. 2019). Because it is unclear which parties the legislature intended to be entitled to a remedy, the provision is ambiguous and we may turn to other materials to determine the legislature's intent.

---

[1] The District and WIAA contend that the language of this provision only allows judicial review under Chapter 28A.645 RCW for "an aggrieved student who has been the subject of a penalty," but not for any other penalized party or entity. Before the 2012 amendment, RCW 28A.600.200(2), which then included the language imputing decisions of WIAA to the relevant district, concerned only student participation in interschool activities and decisions to disallow such participation. Laws of 2012, ch. 155, § 2. The language to which the District and WIAA draw our attention appears to be a holdover from the prior iteration of the statute. Because the current RCW 28A.600.200(3)(a)–(c) provisions were inserted between the section regarding student participation and the provision now allowing judicial review of "[a]ny decision resulting in a penalty," we assume the legislature did not intend to restrict judicial review in this way. Laws of 2012, ch. 155, § 2.

Prior to the most recent amendments of RCW 28A.600.200, 28A.600.205, and 28A.645.010, this court imported the definition of an "aggrieved party" in the context of RAP 3.1 to define the term under RCW 28A.645.010. Briggs v. Seattle School Dist. No. 1, 165 Wn. App. 286, 294, 266 P.3d 911 (2011) (citing State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605 (2003)). Under RAP 3.1, the Supreme Court has defined an aggrieved party as a person whose personal rights or pecuniary interests have been affected by a decision. Id. "The mere fact that one may be hurt in his feelings, or be disappointed over a certain result, or feels that he has been imposed upon . . . does not entitle him to appeal. He must be 'aggrieved' in a legal sense." State ex rel. Simeon v. Superior Court for King County, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944).

Using this definition of "aggrieved," the former students' personal rights or pecuniary interests must have been affected by the vacation of the past BHS football championships to give the Group standing to appeal. Washington courts have recognized that participation in interscholastic sports is not a fundamental right or a constitutionally protected property interest. Taylor v. Enumclaw School Dist. No. 216, 132 Wn. App. 688, 697, 133 P.3d 492 (2006). The Group does not cite any authority for its assertion that "a title win, once earned, is a right to use that title that was granted by the WIAA on the night of the championship game" on a resume, on a college application, for career advancement, or "as they saw fit through the rest of their lives." "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume

that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

There was no testimony or documentation offered by any of the one dozen former student athletes named in the Group's pleadings identifying a personal right or pecuniary interest that was impacted by this decision to vacate the titles, apart from the unsupported claim of a "right to use" the title wins and a generalized assertion at oral argument that their "accomplishments were diminished." The record contains only a solitary declaration from an affected former athlete who listed his 2012 WIAA title win on his resume and claims to have discussed it during a 2013 interview with his current employer. The declaration does not suggest that this past title win was the basis for receiving the job offer, nor that the declarant's ongoing employment is contingent upon his status as a title holder in high school athletics. Neither does the declaration state that declarant was penalized, demoted, or terminated by his employer upon vacation of the 2012 WIAA title. The Group has not shown that any present personal rights or pecuniary interests were affected by the vacation of BHS's past football titles. Accordingly, the Group is not an aggrieved party with standing to appeal under RCW 28A.645.010. The trial court did not err in dismissing the appeal.[2]

---

[2] Because the appellants lack standing, we need not reach the other assignments of error.

Affirmed.

WE CONCUR:

Chun, J.

Mann, A.C.J.