[No. 65607-4-I. Division One. January 30, 2012.]

KEITH ROSEMA ET AL., *Respondents*, v. THE CITY OF SEATTLE, *Respondent*, AN YU ET AL., *Appellants*.

*Duana T. Kolouskova* (of *Johns Monroe Mitsunga PLLC*), for appellants.

*Patrick J. Schneider* and *Jeremy M. Eckert* (of *Foster Pepper PLLC*), for respondents.

¶1 ELLINGTON, J. — This land use action concerns whether the owners of a legally nonconforming duplex abandoned the nonconforming use. We hold that under the definitions in the Seattle Municipal Code (SMC), they did not.

## BACKGROUND

¶2 In 1956, the city of Seattle (City) allowed a single-family residence near the University of Washington to be converted into a duplex. The upper floors retained house number 5211 and the basement unit was given number 5215. The following year, the City changed the neighborhood zoning to single-family residence. The property retained a legal nonconforming use status as a duplex.

¶3 In 1991, Sue and Jerry Nelson purchased the property, which by then had been used illegally as a triplex and had three kitchens. The Nelsons removed the third unit. They did not change the original permitted basement unit, which had a kitchen, two bedrooms and an external entrance. The Nelsons lived there for 18 years as their family home.[1] They apparently never rented the basement unit and used only 5211 as their house number.

¶4 The Nelsons obtained a permit for home improvements in 1993. The permit listed the property as a duplex. At some point, they sought to change the designation to single-family residence, but City officials refused to make the change unless the Nelsons removed the electrical junction box that serviced the second stove. The Nelsons did not do so because of the expense, and so continued to pay separate bills for the electric meters associated with each house number. They also paid for two garbage collection containers because the second kitchen in their basement made the basement a possible rental unit. They did not remove the appliances in the second kitchen.

¶5 In 2009, the Nelsons listed the property for sale. They described it as a single-family residence. An Yu and Shui-Xian Fu (collectively Yu) bought the property and applied for a permit to "[e]stablish use for the record as a duplex"

---

[1] Interior access between the basement and first floors remained intact, although separated by a door.

and for interior alterations, including an increase in the number of bedrooms from six to nine.[2]

¶6 Neighbors Keith Rosema and Anee Brar (collectively Rosema) requested a formal interpretation of the SMC, contending that the nonconforming use as a legal duplex had lapsed during the Nelson's ownership. Rosema further argued that if the property were recognized as a legal nonconforming duplex, the addition of three bedrooms would require off-street parking that would unlawfully increase the nonconformity of the property.

¶7 The City Department of Planning and Development Services (DPD) issued a formal Interpretation of the director determining that the property retained its legal nonconforming use status as a duplex. DPD issued a permit for the structural alterations and determined that one additional off-street parking space would satisfy requirements if Yu increased the number of bedrooms as planned.

¶8 Rosema filed an action under the Land Use Petition Act (LUPA), ch. 36.70C RCW, in King County Superior Court. The court reversed and remanded, but granted a stay pending our review.

## DISCUSSION

### Standard of Review

¶9 We review the City's actions on the administrative record, without reference to the superior court decision.[3] Under LUPA, the party who filed the petition must establish that one of the standards in RCW 36.70C.130(1) is met.[4] The statute provides, in pertinent part:

---

[2] Documentary Record (DR) at 1.

[3] *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 468, 61 P.3d 1141 (2003).

[4] *Quality Rock Prods., Inc. v. Thurston County*, 139 Wn. App. 125, 134, 159 P.3d 1 (2007). Rosema argues that under the SMC, Yu bears the burden of showing the legal nonconforming use was not discontinued but presents no compelling authority to support overriding the burden clearly set forth in LUPA.

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts.[5]

¶10 Neither party challenges DPD's findings, so they are verities on appeal.[6] We review alleged errors of law de novo, after giving due deference to the local jurisdiction's interpretation of its codes and standards where there is ambiguity or conflict.[7] We review a challenge to the sufficiency of the evidence under the substantial evidence standard,[8] viewing the evidence and reasonable inferences in the light most favorable to the prevailing party in the highest forum that exercised fact-finding authority.[9] We review application of the law to the facts under the clearly erroneous standard, reversing only when, after considering the entire record, we are firmly convinced the administrative body erred.[10]

---

[5] RCW 36.70C.130(1).

[6] *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011); RAP 10.3(g).

[7] RCW 36.70C.130(1)(b); *Miller v. City of Bainbridge Island*, 111 Wn. App. 152, 162, 43 P.3d 1250 (2002); *Quality Rock*, 139 Wn. App. at 133.

[8] RCW 36.70C.130(1)(c); *Miller*, 111 Wn. App. at 162 (appellate court will overturn findings only if not supported by substantial evidence).

[9] *Friends of Cedar Park Neighborhood v. City of Seattle*, 156 Wn. App. 633, 641, 234 P.3d 214 (2010). Rosema contends this standard is not applicable here because it originated in cases predating LUPA, and because DPD does not constitute a forum that exercised fact-finding authority. But this standard has, in fact, been applied in LUPA decisions, see *id.*, and DPD has the authority to issue an interpretation of the Land Use Code, Title 23 SMC, including findings and conclusions. SMC 23.88.020.

[10] *Woodinville Water Dist. v. King County*, 105 Wn. App. 897, 904, 21 P.3d 309 (2001); *Quality Rock*, 139 Wn. App. at 133.

## Nonconforming Use

■■■ ¶11 A legal nonconforming use is a vested right. The right may be lost by abandonment or discontinuance, but a party so claiming has a heavy burden of proof.[11] Abandonment or discontinuance is a question of fact, and ordinarily depends upon a concurrence of two factors: " '(a) [a]n intention to abandon; and (b) an overt act, or failure to act, which carries the implication that the owner does not claim or retain any interest in the right to the nonconforming use.' "[12]

¶12 Nelson stated it was his family's intent to use the house as a single-family residence, as opposed to a duplex. But intent alone is not enough. To show discontinuance of the property's preexisting nonconforming use, Rosema must show an overt act or failure to act by the Nelsons that satisfies the standards for discontinuance as defined by the SMC.

■■ ¶13 The SMC provides that a legal nonconforming use is discontinued where, for more than 12 consecutive months, "[t]he structure or a portion of a structure is not being used for the use allowed by the most recent permit."[13] The most recent permit is the Nelson's 1993 permit for home improvements, which notes the property is a duplex.[14]

¶14 Under the SMC, the noun "use" means "the purpose for which land or a structure is designed, built, arranged,

---

[11] *Van Sant v. City of Everett*, 69 Wn. App. 641, 648, 849 P.2d 1276 (1993).

[12] *Id.* (quoting 8A Eugene McQuillin, The Law of Municipal Corporations §§ 25.191, .192 (3d ed. 1986)).

[13] SMC 23.42.104(B)(2).

[14] The 1993 application described the project as "interior alterations to SFR [(Single Family Residence)]," but "SFR" was struck and the word "duplex" added in its place. There is also a note in the header area of the application that says, "Duplex?" These are apparently notes and changes made by the City. DR at 163.

intended, occupied, maintained, let or leased."[15] The SMC does not explicitly define the purpose of a duplex, but it does offer clear indications that its purpose is to house multiple families as independent households. "Multifamily residential use" under the SMC means "a use consisting of two or more dwelling units in a structure or portion of a structure, excluding accessory dwelling units."[16] Thus, because a duplex contains two dwelling units, its purpose is to house multiple households.[17]

¶15 The question here, then, is whether the Nelsons' failure to use the basement unit of their property to house an independent household, while maintaining the structural capability to do so, was an overt act or failure to act sufficient to imply disclaimer of their interest in the property's intended purpose as a duplex.

¶16 DPD determined the evidence was equivocal as to whether the Nelsons abandoned the right to the nonconforming use and as to whether the structure was used for the use allowed. Given that ambiguity and given the heavy burden to prove lapse of nonconforming use, DPD ruled the nonconforming use did not lapse.[18]

¶17 We are not persuaded this conclusion was error. Despite living with their family in the entire structure, the Nelsons maintained the separate basement unit, which was legal only if the structure was a nonconforming duplex or

---

[15] SMC 23.84A.040.

[16] SMC 23.84A.032. A "dwelling unit" means "a room or rooms located within a structure, designed, arranged, occupied or intended to be occupied by not more than one household as living accommodations independent from any other household. The existence of a food preparation area within the room or rooms shall be evidence of the existence of a dwelling unit." SMC 23.84A.008. And "household" means "a housekeeping unit consisting of any number of related persons." SMC 23.84A.016.

[17] A "duplex" is defined as "a single structure containing only two dwelling units, neither of which is an accessory dwelling unit authorized under [SMC] 23.44.041." SMC 23.84A.008.

[18] It is DPD practice to assume that a use established by permit remains valid absent clear evidence it has lapsed.

the unit was permitted as an additional dwelling unit. They declined to make the structural changes required by the City for recognition as a single-family home or to seek an additional dwelling unit permit, which would have allowed continued maintenance of a second kitchen in a single-family residence. These failures to act do not fairly imply discontinued interest in the property's use as a duplex. Under the code, the legal status of the property necessarily retained its preexisting nonconforming use as a duplex.

¶18  The Rosemas failed to meet the burden of establishing that a nonconforming use has been abandoned. We reverse the superior court and affirm DPD on the issue of nonconforming use.

## *Off-Street Parking Determination*

¶19  The parties do not dispute DPD's determination that the SMC requires a third parking space if the number of bedrooms are increased as proposed. Yu's plans reflect a total of five parking spaces, three of which are located in the front and side yard.

¶20  The SMC prohibits parking more than three vehicles outdoors on a lot in a single-family zone and prohibits parking in required front and side yards.[19] A legally established nonconforming parking space may continue to be used.[20]

¶21  The superior court ordered DPD to limit the number of outdoor parking spaces on the property to three as required by the code, and to prohibit those spaces from being located in the front or side yard except to the extent Yu can establish that one or more such parking spaces were legally established by prior owners. We agree. We remand to DPD to determine whether any of the apparently nonconforming parking spaces on Yu's plans were legally established by prior owners.

---

[19] SMC 23.44.016(C)(3), (D).

[20] SMC 23.42.100, .102.

*Attorney Fees*

¶22 Rosema requests attorney fees under RAP 18.9 for a frivolous appeal and for failure to cite to the superior court decision. He also requests this matter be remanded to the superior court for determination of compensatory damages for loss of "peaceful enjoyment of their property."[21] But this appeal was not frivolous, and failure to reference the superior court decision is not grounds for sanctions, especially where our review is on the administrative record.

¶23 We reverse the superior court and affirm DPD as to the nonconforming use, and affirm the superior court and remand to DPD as to the parking issues.

LAU, J., concurs.

¶24 SCHINDLER, J. (concurring) — I concur with the analysis of the majority but write separately to also point out and emphasize the intent of the City to preserve a nonconforming use. A city has the right "to preserve, limit or terminate nonconforming uses subject only to the broad limits of applicable enabling acts and the constitution." *Rhod-A-Zalea & 35th, Inc. v. Snohomish County*, 136 Wn.2d 1, 7, 959 P.2d 1024 (1998). The City of Seattle adopted regulations that favor permitting a nonconforming use and are designed to avoid inadvertently discontinuing a legally established nonconforming use. Seattle Municipal Code (SMC) 23.42.100(B) states:

> It is the intent of these provisions to establish a framework for dealing with nonconformity that *allows most nonconformities to continue*. The Code facilitates the maintenance and enhancement of nonconforming uses and developments so they may exist as an asset to their neighborhoods. The redevelopment of

---

[21] Resp'ts' Br. at 42.

nonconformities to be more conforming to current code standards is a long term goal.[22]

The SMC also defines "use" to include what the building is designed for as well as how the building is used. "Use" means the purpose for which land or a structure is designed or maintained. SMC 23.84A.040. Here, Rosema cannot show that Department of Planning and Development Services did not correctly interpret and apply the provisions of the SMC in concluding the residence was designed and "continuously maintained" as a duplex.

---

[22] (Emphasis added.)