# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TYKO JOHNSON, | ) | No. 68819-7-I |
| | ) | (consolidated with No. |
| Appellant, | ) | 68994-1-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| CITY OF SEATTLE, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | FILED: October 13, 2014 |
| | ) | |

APPELWICK, J. — Johnson was cited by the City for parking more than three vehicles on his single-family lot. He subsequently established that he had a vested right to a legal nonconforming use to park five additional cars on his lot. Under the City's ordinance scheme, Johnson was unable to present evidence of his nonconforming use as a defense to his citations. This violated his right to procedural due process. We vacate the citations, reverse the dismissal of his § 1983 claims, and remand.

## FACTS

Tyko Johnson owns a single-family home in Seattle. He has lived in the home since 1959. Johnson is a self-described "car guy." Since he moved in, he has kept multiple trailers, cars, and "car type projects" on the property.

On June 25, 2010, the City of Seattle (City) issued Johnson a warning informing him that he was in violation of the Seattle Municipal Code (SMC or Code). The warning instructed Johnson that he must "[l]imit the number of vehicles parked outdoors on a single-family lot to three (3)." On July 30, 2010, the City sent a second warning to Johnson. It informed him that, if he did not "take care of this situation in a timely manner," he would be subject to citation.

On September 13, 2010, the City issued Johnson a citation with a $150 penalty.[1] The citation indicated that Johnson had "more than the allowed 3 vehicles parked on a single family lot" in violation of SMC 23.44.016. Johnson requested a citation hearing, which took place on October 28, 2010. At the hearing, Johnson argued that he had a legal nonconforming use.[2] On November 4, 2010, the hearing examiner issued an order affirming the citation. The order stated that the Department of Planning and Development (Department) must determine whether a property use is legal nonconforming. Because Johnson had not established a legal nonconforming use at the time of the hearing, the examiner concluded that the citation was proper.

On December 15, 2010, the City issued Johnson a second citation for parking more than three vehicles on a single-family lot. The penalty for the second citation was $500. Johnson again requested a hearing, which took place on January 27, 2011. The examiner affirmed the second citation.

On February 22, 2011, the City issued Johnson a third citation, again with a penalty of $500, for parking more than three vehicles on a single-family lot. Johnson again appealed. The City moved for summary judgment. The hearing examiner granted summary judgment on April 4, 2011.

On March 16, 2011, the City sent Johnson a letter explaining the process for applying to the Department to establish his nonconforming use for the record. On May

---

[1] Johnson was cited for junk storage in addition to parking more than three vehicles on his lot. His junk storage citation was later dismissed. For the purposes of this opinion, we discuss only the parking violations.

[2] A legal nonconforming use is one that lawfully existed prior to the enactment of a zoning ordinance, is maintained after the ordinance is enacted, and is not abandoned or discontinued. McMilian v. King County, 161 Wn. App. 581, 591, 255 P.3d 739 (2011).

11, Johnson applied to the Department. On August 31, 2011, the Department determined that Johnson had established his use as legal nonconforming.

Johnson also filed three Land Use Petition Act (LUPA), chapter 36.70C RCW, petitions, contesting each of his citations.[3] He argued that he was denied an opportunity to be heard on the status of his legal nonconforming use. On March 14, 2012, the trial court ruled on the three petitions together. It found that the hearing examiner correctly concluded that she could not determine whether a use was legal nonconforming. The court affirmed the first two citations. Regarding the third citation, the court acknowledged that Johnson applied to establish his nonconforming use for the record. It ruled that, "As Mr. Johnson has now followed the procedure and made the application, Citation 3 should be remanded to the proper authority for a mitigation hearing."

In conjunction with his LUPA petitions, Johnson also brought claims for damages under 42 U.S.C. § 1983. He alleged a violation of procedural due process. On February 9, 2011, the City moved to dismiss Johnson's § 1983 claims associated with his first two LUPA petitions. The City argued that Johnson did not demonstrate a violation of a clearly established right. The court granted the City's motion, dismissing Johnson's first two § 1983 claims with prejudice. On April 6, 2012, the City moved for summary judgment to dismiss Johnson's third § 1983 claim. The City argued that Johnson had been provided due process. The court granted summary judgment.

Johnson appeals the order affirming his citations and the orders dismissing his § 1983 claims.

---

[3] Johnson's petitions were dated December 27, 2010; February 11, 2011; and April 28, 2011. He filed the first two pro se. He retained counsel for the third petition and present appeal.

DISCUSSION

I. Nonconforming Uses

A legal nonconforming use is one that "does not conform to a zoning law but which lawfully existed at the time the law went into effect and has continued to exist without legal abandonment since that time." 8A EUGENE MCQUILLIN, MUNICIPAL CORPORATIONS, § 25.185 (3d ed. 2003); see also Rhod-A-Zalea & 35th, Inc. v. Snohomish County, 136 Wn.2d 1, 6, 959 P.2d 1024 (1998). A legal nonconforming use is a vested right. Rosema v. City of Seattle, 166 Wn. App. 293, 299, 269 P.3d 393 (2012); Van Sant v. City of Everett, 69 Wn. App. 641, 649, 849 P.2d 1276 (1993). Generally, vested rights cannot be taken away once created. Navlet v. Port of Seattle, 164 Wn.2d 818, 828 n.5, 194 P.3d 221 (2008). Landowners have the right to continue their legal nonconforming uses, subject to proof of existence and reasonable government regulations. Rhod-A-Zalea, 136 Wn.2d at 6; City of Univ. Place v. McGuire, 144 Wn.2d 640, 648, 30 P.3d 453 (2001); McMilian v. King County, 161 Wn. App. 581, 591, 255 P.3d 739 (2011); 8A E. MCQUILLIN, MUNICIPAL CORPORATIONS, § 25.180.20. Proof of existence may include a showing that the use predated the current ordinance and comparing the scope of the prior and current uses.[4] See McMilian, 161 Wn. App. at 591; McGuire, 144 Wn.2d at 649 ("Under Washington common law, nonconforming uses may be intensified, but not expanded."). "The use must be the same before and after the zoning restriction becomes effective, and this is usually a question of fact." 8A E. MCQUILLIN, MUNICIPAL CORPORATIONS, § 25.186. The local government may impose regulations on nonconforming uses, such as requiring

---

[4] Legal nonconforming uses are also subject to abandonment and other considerations not at issue here. See McMilian, 161 Wn. App. at 591.

a permit as a condition of those uses' continued legality. See Des Moines v. Gray Bus., LLC, 130 Wn. App. 600, 603-05, 124 P.3d 324 (2005). Under certain circumstances, the government may extinguish a nonconforming use. See, e.g., Ackerley Commc'ns, Inc. v. Diamond Parking, Inc., 92 Wn.2d 905, 920, 602 P.2d 1177 (1979) ("It is a valid exercise of the City's police power to terminate certain land uses which it deems adverse to the public health and welfare within a reasonable amortization period."). However, "to require the immediate cessation of a nonconforming use is unconstitutional if it brings about a deprivation of property rights out of proportion to the public benefit obtained therefrom." State v. Thomasson, 61 Wn.2d 425, 427-28, 378 P.2d 441 (1963). Accordingly, local governments generally permit existing nonconforming uses to continue due to the "'hardship and doubtful constitutionality'" of immediately terminating such uses. Id. at 428 (quoting County of San Diego v. McClurken, 37 Cal. 2d 683, 686, 234 P.2d 972 (1951)).

The Code recognizes legal nonconforming uses. SMC 23.42.102(A). SMC 23.42.102 sets forth the procedure for establishing a legal nonconforming use for the record.[5] It provides, in pertinent part:

A. Any use that does not conform to current zoning regulations, but conformed to applicable zoning regulations at any time and has not been discontinued as set forth in Section 23.42.104 is recognized as a nonconforming use or development. . . . A recognized nonconforming use shall be established according to the provisions [of this section].

B. Any use or development for which a permit was obtained is considered to be established.

C. A use or development which did not obtain a permit may be established if the Director [of the Department] reviews and approves an application to establish the nonconforming use or development for the record.

---

[5] We note that establishing a record of nonconforming uses has practical value for enforcing and preserving those uses. SMC 23.42.102(D), (E).

Though the term "permit" is not used, the City treats this procedure as a permitting process. The City maintains that the Code "requires nonconforming uses [to] be established" and "provides one way to establish a nonconforming use—apply to the Department."[6] The City further asserts that only the Department can determine whether a legal nonconforming use exists. Per the City's ordinance scheme, a hearing examiner presiding over a citation hearing is not authorized to determine whether a legal nonconforming use exists,[7] even though the existence of that use would be a defense to the citation. See SMC 23.42.102(C). The City acknowledges that, once the nonconforming use is established for the record, the landowner cannot be cited for the use. Thus, in essence, the existence of a legal nonconforming use becomes a complete defense to citation. Nonetheless, until a nonconforming use is established with the Department, the City does not recognize the use as legal and the landowner remains subject to citation.[8]

---

[6] The City characterizes this ordinance as a lawful condition placed on a nonconforming use. As support, it relies on Gray. In Gray, we upheld an ordinance permitting mobile home parks to retain legal nonconforming use status on the condition that owners created a plan or schematic of their parks by a designated date. 130 Wn. App. at 604, 606. Gray involved a condition imposed subsequent to the recognition of a legal nonconforming use. This case does not. Gray has no application here.

[7] Nor does the Code contain a provision for staying a citation hearing pending the application for and approval of an established legal nonconforming use. See SMC 23.42.102. The City acknowledged at Johnson's first hearing that, if a landowner applied for a legal nonconforming use, it would consider rescinding the citation at that time. But, the ordinance does not provide for rescission, even on approval of the application. Nor does it require notice to those cited that such an option—even in the Department's discretion—is available.

[8] In addition, the Code provides that each day in violation is a separate violation and may be separately cited. SMC 23.91.024. From the time Johnson applied, the City took 112 days to process and recognize his legal nonconforming use. The City could have cited him daily, though it did not. The Code makes no provision to vacate these penalties. See SMC 23.42.102, 23.91.024. The exposure to penalties is not insignificant even if a legal nonconforming use is recognized.

On this point, we disagree with the City. The establishment procedure does not create a legal use—it merely verifies that a legal use existed and has not been abandoned or discontinued at any intervening time. Recognition of nonconforming uses entails fact-finding, because the vested rights are defined by their historic existence and scope. 8A E. MCQUILLIN, MUNICIPAL CORPORATIONS, § 25.185, .186. When the Department accepts this factual proof and establishes a nonconforming use for the record, it also recognizes that, as a matter of law, the vested right has existed throughout the entire period in which it has been nonconforming. See Thomasson, 61 Wn.2d at 427. Johnson was therefore never in violation for parking too many vehicles on a single-family lot, though that is what he was cited and penalized for doing. He was only without a permit for his nonconforming use, but he was not cited for not having a permit. And, the ordinance does not provide penalties for failing to apply to establish a nonconforming use for the record nor a time frame within which application must be made.[9] See SMC 23.42.102; compare Gray, 130 Wn. App. at 605.

Johnson does not claim that the City cannot require him to apply to the Department or to pay a fee to establish his use. He does not object to having to prove the fact of his prior legal use and its continuation. Nor could he. These are well-recognized as lawful conditions to a legal nonconforming use. See 8A E. MCQUILLIN, MUNICIPAL

---

[9] We acknowledge that the City may require landowners to register their nonconforming uses. 8A E. MCQUILLIN, MUNICIPAL CORPORATIONS, § 25.182.10. However, under the present ordinance, the City may not penalize landowners for failing to register their uses prior to receiving a citation. See Gorelli v. Allegheny Twp. Zoning Hr'g Bd., 796 A.2d 1051, 1054 (Pa. Commw. Ct. 2002) (finding that plaintiffs, who did not register nonconforming use prior to notice of violation (NOV), did not violate registration ordinance; ordinance did not establish time limit, did not require registration prior to NOV, and did not require registration as precondition to raising defense of use before zoning board).

CORPORATIONS, § 25.188.50. However, Johnson claims that the City violated his procedural due process rights by failing to dismiss the citations once his legal nonconforming use was established for the record or failing to stay the citation hearings pending his application to establish his use.

II. Procedural Due Process

Johnson argues that the City violated his right to procedural due process by preventing him from asserting his legal nonconforming use as a defense.[10] We review constitutional challenges de novo. City of Redmond v. Moore, 151 Wn.2d 664, 668, 91 P.3d 875 (2004). The two touchstones of procedural due process are notice and the opportunity to be heard. King County Pub. Hosp. Dist. No. 2 v. Dep't of Health, 178 Wn.2d 363, 380, 309 P.3d 416 (2013). Notice must be reasonably calculated to inform interested parties of an action against them and give them the ability to make an appearance on their own behalf.[11] Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). A party's opportunity to be heard must be meaningful both in time and manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d

---

[10] Johnson does not raise a substantive due process challenge. Accordingly, we address only procedural due process.

[11] Johnson does not base his procedural due process claim on a lack of notice. The citations apprised him of the nature of the violation and the right to challenge it, though they made no mention of nonconforming uses. On the record before us, Johnson was not informed about the establishment procedure until the hearing examiner's order affirming the first citation. The order said, "SMC 23.42.102 prescribes the process for determining whether a use of property is legally nonconforming to present Land Use Code requirements. That determination is made by the Department, not the Hearing Examiner." The City reiterated this in the second hearing, stating that "the only way that legal non-conforming use can be established is through an approval by the director [of the Department.]" After Johnson received a third citation, the City wrote him a letter about establishing his nonconforming use. The letter explained the establishment process and said, "Parking more than three vehicles on your lot remains, however, a violation until that use is established." Johnson then applied to the Department.

18 (1976). To determine whether existing procedures are adequate to protect the interest at stake, we consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 335.

Johnson was penalized for how he used his property. The monetary penalties were intended to force him to comply with the zoning code. Citizens have an interest in avoiding erroneous monetary penalties. Post v. City of Tacoma, 167 Wn.2d 300, 313, 217 P.3d 1179 (2009). In Post, Tacoma cited Post for multiple violations of the city building code. Id. at 303. Under Tacoma's enforcement scheme, landowners were sent a notice of violation (NOV) and given 30 days to respond. Id. at 304. If they did not respond or correct the violation, they would be subject to increasing civil penalties which could be assessed daily. Id. at 304-05. Only the initial NOV and first monetary penalty were appealable. Id. at 312. Subsequent penalties were not. Id. Post had no opportunity to present a defense, such as compliance. See id. The court noted that Post had the right to avoid erroneous or excessive monetary penalties. Id. at 313. It then addressed the apparent risk of erroneous deprivation resulting from Post's inability to address potential errors in Tacoma's assessment of subsequent penalties. Id. at 313-14. The court stated that "the addition of any procedural safeguards would provide exceedingly greater mitigation against the risk of erroneous deprivation." Id. at 314. Finally, the court observed that, while cities have a strong interest in the efficient enforcement of their

building codes, Tacoma did not assert that providing additional safeguards would be an overwhelming administrative burden. Id. Weighing the Mathews factors, the Post court concluded that Tacoma's enforcement scheme violated due process. See id. at 313-15.

Here, the City disputes that Johnson has a protected property interest. It maintains that Post does not apply, because Johnson was required to pay a permit processing fee, not a civil penalty. But, Johnson does not challenge the filing fee. He challenges his citations for violating the City's ordinance and the corresponding monetary penalties. He, like Post, had a right to avoid erroneous monetary penalties. And, he had a vested right to the nonconforming use; this is a property interest even if contingent upon factual verification. See Rosema, 166 Wn. App. at 299.

Citing Scott v. City of Seattle, 99 F. Supp. 2d 1263 (W.D. Wash. 1999), the City argues that the citations do "not establish a protected property interest until a court determines that a violation exists." In Scott, the plaintiffs argued that an NOV and accompanying order issued against their moorage landlord impaired their interest in the underlying property. Id. at 1266, 1267. The plaintiffs asserted that they should have been given the opportunity to challenge the order prior to its issuance. Id. at 1267. The court stated that "plaintiffs here cannot be deprived of a property interest until a court has heard their case and determined that a violation occurred; no encumbrance to their property occurred when the NOV or the Order issued, therefore, there was no deprivation of a substantial property right." Id. at 1268 (emphasis added). Importantly, the Scott plaintiffs were not the ones cited. See id. at 1266. The court said it could not enforce due process rights affecting a property interest until the plaintiffs' property interest had been established by the court. Id. at 1267, 1268. The court noted that state law did not support

finding that the plaintiffs had a property interest. Id. at 1267. The present case is distinguishable. Johnson's property interest is clear. He wishes to maintain his nonconforming use and to avoid the erroneous penalties assessed against him personally for his use of his real and personal property.

As in Post, the risk of deprivation here is apparent. Johnson was cited for violating SMC 23.44.016, which prohibits parking more than three vehicles on a single-family lot. But, Johnson had a legal nonconforming use to park five additional vehicles on his lot. Johnson was—and always had been—using his property legally. See Rhod-A-Zalea, 136 Wn.2d at 6. A legal nonconforming use is a complete defense to a Code citation.

However, when Johnson tried to defend against his first citation with evidence of his nonconforming use, the hearing examiner would not consider his defense. The Code prevented the examiner from doing so. See SMC 23.42.102(C). The examiner could take other factual evidence, such as the operability of alleged junk vehicles and the number of vehicles present at various times. As to the nonconforming use inquiry, however, Johnson could show only that he established his use with the Department. Johnson was not provided a stay for an opportunity to apply to the Department. He was not told that his citation would be vacated if he subsequently made the proper factual showing to the Department. The examiner affirmed Johnson's first citation.

Johnson was cited twice more with the same result. He then applied to the Department to establish his legal nonconforming use for the record. After 112 days, his application was approved. By virtue of Johnson's pending LUPA appeal, his citations had not yet become final. But, the City did not rescind his citations—even though Johnson demonstrated that he did not violate the ordinance for which he was cited.

Johnson appealed to the superior court. He again attempted to assert his legal nonconforming use defense, this time demonstrating that he followed the proper procedure and successfully applied to the Department. The trial court did not regard this evidence to be a defense to his citations. It upheld his citations.[12]

Once cited, Johnson had no opportunity to present his defense and was provided no procedural safeguards. Johnson, like Post, could not present his defense to the hearing examiner. See 167 Wn.2d at 312-13. He was not given a stay to apply to the Department. And, the availability of a LUPA appeal provided Johnson no relief. Johnson was denied the opportunity to be heard.

Addressing the third Mathews factor, the City alleges no administrative burden that would result from providing additional safeguards to ensure that landowners avoid penalties for their legal property uses. Processing the application would be the same. Staying the citation hearing pending application review would likely lessen the burden from hearings, potentially avoiding the hearings altogether. The City could also allow the hearing examiner to take the facts and make the establishment determination. Even this does not suggest any added burden.

Unlike Post, Johnson was provided a forum to contest his citations. But, importantly, he was prevented from asserting a valid defense. He was thus denied a meaningful opportunity to be heard.

---

[12] The trial court affirmed Johnson's first two citations. Because Johnson's nonconforming use application was pending at the time of the third citation, the trial court remanded the third for a mitigation hearing. Mitigation indicates that Johnson was still at fault, although his penalty may be reduced. See BLACK'S LAW DICTIONARY 1093 (9th ed. 2009) ("Mitigation of punishment" is a "reduction in punishment due to mitigating circumstances.").

To demonstrate a valid § 1983 claim, a plaintiff must show that a person acting under color of state law deprived the plaintiff of a federal constitutional or statutory right. Sintra, Inc. v. City of Seattle, 119 Wn.2d 1, 11, 829 P.2d 765 (1992). A local government is a person for purposes of § 1983. Id. Land use disputes are an appropriate subject of § 1983 actions. Id. The City violated Johnson's right to procedural due process. Accordingly, Johnson has demonstrated valid claims for damages under § 1983.

We vacate the citations and reverse the dismissal of Johnson's § 1983 claims. Because we vacate Johnson's citations, they do not constitute damages under § 1983. We remand for the trial court to determine whether Johnson had additional damages and, if so, award them.

III.    Attorney Fees

Johnson requests fees under 42 U.S.C. § 1988.[13] Section 1988 provides for an award of reasonable attorney fees in any action or proceeding to enforce § 1983. 42 U.S.C. § 1988(b). We grant his reasonable fees in bringing this appeal, subject to his compliance with RAP 18.1(d). From the record, it appears Johnson did not have representation until his third LUPA petition and the present appeal. We leave the fees awardable prior to this appeal and those awardable on remand for the trial court to determine.

---

[13] In his first two LUPA petitions, Johnson requested fees under chapter 64.40 RCW and chapter 36.70C RCW. He does not renew this request on appeal. It is waived. RAP 18.1(b) ("The party must devote a section of its opening brief to the request for the fees or expenses.").

Johnson also requests costs under RAP 14.2 and 14.3. Under these provisions, we award Johnson statutory attorney fees and reasonable expenses as the substantially prevailing party. RAP 14.2, 14.3(a).

We vacate the citations, reverse the dismissal of Johnson's § 1983 claims, and remand for further proceedings.

WE CONCUR:

Becker, J.