IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERENCE R. JOHNSON, | No. 84246-3-I |
| Appellant, | DIVISION ONE |
| v. | |
| DEPARTMENT OF LICENSING, a Washington State Agency, | UNPUBLISHED OPINION |
| Respondent. | |

SMITH, C.J. — Under Washington law, when the Department of Licensing receives notice from a court that an individual has failed to pay court-ordered fines resulting from a drunk driving offense, it must suspend that person's license. After Terence Johnson repeatedly failed to pay his fines, the Kirkland Municipal Court provided such notice, and Johnson's license was suspended. Johnson contends the Department violated due process by not holding its own hearing to determine his ability to pay the fines. Our Supreme Court concluded that the statutory scheme governing license suspensions satisfies due process in City of Bellevue v. Lee, 166 Wn.2d 581, 210 P.3d 1011 (2009). Lee controls here; therefore, we conclude due process was satisfied and affirm.

FACTS

In May 2014, Johnson was charged with and pleaded guilty to driving under the influence in the Kirkland Municipal Court.[1] At sentencing, the municipal court imposed jail time and ordered Johnson to pay a series of

---

[1] Johnson was pro se during arraignment.

Citations and pin cites are based on the Westlaw online version of the cited material.

mandatory and discretionary legal financial obligations (LFOs). These LFOs totaled $4,068.91 and were payable to the municipal court clerk's office. The judgment and sentence contained a notice that "[f]ailure to pay [the fines] in full or have a payment plan set up with Signal Management by the due date . . . may result in additional late penalties and the matter will be referred to a collection agency." The notice informed Johnson that failure to pay "may also result in a bench warrant and/or the suspension of [his] driving privileges as directed by the Department of Licensing." Johnson did not challenge the imposition of the LFOs at sentencing and he did not appeal the judgment and sentence.

Between May 2014 and May 2019, Johnson appeared at several review hearings before the municipal court to evaluate his compliance with the requirements of his DUI conviction.

2015 Suspension

In 2015, the municipal court notified the Department that Johnson had failed to make required LFO payments. As mandated by statute, the Department sent Johnson a notice informing him of his pending license suspension and how to resolve the payment issue or seek administrative review of the Department's proposed action. See RCW 46.20.245(2) (setting out notice requirements in license suspension process). Johnson requested an administrative review of the proposed suspension. The Department completed its review and informed Johnson it was upholding the suspension.

Johnson then both appealed the Department's decision in King County Superior Court and filed a civil complaint against the Department in federal court,

alleging the Department unlawfully suspended his license. The federal court dismissed Johnson's case for failure to exhaust state administrative remedies. Johnson v. Dep't of Licensing, No. C15-0446MJP (W.D. Wash. June 22, 2015). Following this, and while his appeal was pending in superior court, Johnson filed a Chapter 13 bankruptcy petition. Filing for bankruptcy automatically stayed all collection actions against Johnson, which in turn stayed the Department's suspension of his license. Because of the stay, the Department reissued Johnson's license and the superior court dismissed his appeal as moot.

Two years later, in July 2017, the bankruptcy court dismissed Johnson's petition and Johnson was again required to pay his LFOs.

### 2018 Suspension

Soon after his bankruptcy petition was dismissed, the municipal court issued another notice to the Department about Johnson's nonpayment of the LFOs. In December 2017, the Department sent Johnson a new notice informing him that his license would be suspended if he did not either resolve the payment issue with the court or seek administrative review with the Department. Johnson did neither. Instead, in January 2018, Johnson filed a second civil complaint against the Department in federal court. Johnson v. Dep't of Licensing, No. C18-0147JLR (W.D. Wash. Feb. 26, 2018). The federal court again dismissed Johnson's complaint for failure to exhaust administrative remedies. Johnson, No. C18-0147JLR at *1. As a result of his inaction, Johnson's license was suspended for the second time in early February 2018.

While Johnson's license was suspended, he continued to drive and was subsequently charged in March 2019 for driving with a license suspended (DWLS) in Mercer Island District Court. The DWLS charge violated the terms of Johnson's 2015 DUI conviction and, as a result, the municipal court imposed 30 additional days of electronic home monitoring.

2019 Lawsuit

In May 2019, Johnson moved the municipal court to reduce or waive his remaining LFOs. The court removed his LFOs from collections, waived all accrued interest, cut Johnson's principal balance in half, and required him to make monthly payments of fifty dollars. The court also told Johnson that if he made payments for six months, he could move the court to strike the remaining balance. The court then sent the Department a notice indicating that Johnson was eligible for license reinstatement.

In September 2019, Johnson filed a third civil complaint against the Department, his first in King County Superior Court, alleging the Department unlawfully suspended his license without offering him a payment plan for his court fines. The Department moved for summary judgment. Johnson requested a continuance to obtain municipal court records, which the court denied. The court granted the Department's summary judgment motion and Johnson appealed to this court. We concluded that the superior court abused its discretion in denying Johnson's continuance motion and remanded for further proceedings. Johnson v. Dep't of Licensing, No. 81646-2-I, slip op. (Wash. Ct. App. June 28, 2021) (unpublished), https://www.courts.wa.gov /opinions/pdf/

816462.pdf.[2]

On remand, Johnson amended his complaint, maintaining his earlier arguments but seeking an additional declaration that the statutory scheme for license suspensions is unconstitutional.  The parties cross-moved for summary judgment.  The court granted the Department's motion and denied Johnson's motion for reconsideration.

Johnson appeals.

## ANALYSIS

On appeal, Johnson contends (1) that the Department's suspension of his license violated his due process rights under article 1, section 3 of the Washington Constitution, (2) that the Department's suspension of his license violated his statutory rights under RCW 10.01.160, (3) he is entitled to a "decree" that his claims are justiciable, (4) he is entitled to another "decree" ordering the Department to reinstate his license and ordering the Mercer Island District court to dismiss his pending DWLS citation, and (5) that the court erred in denying his motion for reconsideration.  Because we conclude Johnson's due process and statutory rights were not violated, we also conclude the court did not err in granting the Department's motion for summary judgment and we affirm.

### Standard of Review

"We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the

---

[2] GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").

nonmoving party." Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c).

Due Process

Johnson asserts that the statutory scheme for suspending driver's licenses—which requires the Department to automatically suspend a license if it receives notice from a court under RCW 46.64.025—violates the due process clause of article I, section 3 of the Washington Constitution because it does not require the Department to certify that the court conducted an ability-to-pay hearing. He urges us to declare the automatic suspension requirement in RCW 46.20.289 unconstitutional. The Department contends that the constitutionality of the statutory scheme issue has already been addressed by our state Supreme Court in Lee, 166 Wn.2d at 589. We agree with the Department.

We review the constitutionality of a statute de novo. OneAmerica Votes v. State, 23 Wn.2d 951, 963, 518 P.3d 230 (2022). Statutes are presumed to be constitutional and the party challenging the constitutionality of the statute must prove its unconstitutionality beyond a reasonable doubt. Assoc. Gen. Contractors of Wash. v. State, 200 Wn.2d 396, 403, 518 P.3d 639 (2022).

Under RCW 46.64.025, whenever a person fails to comply with the terms of a criminal complaint or criminal citation for a moving violation, the court "*shall* promptly give notice of such fact to the department of licensing." (Emphasis added.) When the Department receives such notice from the court,

6

RCW 46.20.289 provides that "the department *shall* suspend all driving privileges." (Emphasis added.) Before suspension, the Department must give the driver 45 days written notice. RCW 46.20.245(1). The driver may then request an administrative review within 15 days of receiving the notice. RCW 46.20.245(3). The only issues to be addressed in the administrative review are: "(i) Whether the records relied on by the department identify the correct person; and (ii) Whether the information transmitted from the court or other reporting agency or entity regarding the person accurately describes the action taken by the court or other reporting agency or entity." RCW 46.20.245(b).

Our state Supreme Court addressed the constitutionality of the Department's suspension procedures as outlined in RCW 46.20.245 and RCW 46.20.289 and concluded they meet due process requirements.[3] Lee, 166 Wn.2d at 583. In Lee, motorists whose driver's licenses were suspended for nonpayment of traffic citations brought an action against the city, challenging the Department's suspension procedures. 166 Wn.2d at 583. Applying the

---

[3] In Lee, the Court considered whether the statutory scheme violated the due process clause of the Fourteenth Amendment to the United States Constitution. See 166 Wn.2d at 583-86 (citing City of Redmond v. Moore, 151 Wn.2d 664, 91 P.3d 875 (2004), in which the Court invalidated a prior set of suspension procedures for violating the Fourteenth Amendment due process clause).

The Court has also held that article I, section 3 of the Washington Constitution is virtually identical to its federal analogue and provides " 'no further elaboration' " of rights. In re Pers. Restraint of Matteson, 142 Wn.2d 298, 310, 12 P.3d 585 (2000) (quoting State v. Ortiz, 119 Wn.2d 295, 302, 831 P.2d 1060 (1992).

Mathews[4] balancing test, the Court concluded that the Department's procedures met due process requirements because they provide both notice and a meaningful opportunity to be heard. Lee, 166 Wn.2d at 589.

Lee is controlling in the present case. Johnson advances a similar argument as the drivers in Lee—he asserts that the license suspension procedures outlined in RCW 46.20.245 and 46.20.289 violate due process because he was not provided an in-person hearing. 166 Wn.2d at 583-85. But Johnson offers no compelling argument as to how Lee is distinguishable from the present case; and the cases he cites in an attempt to distinguish Lee are unconvincing. Both predate Lee and concern different statutory schemes for license suspension. See Flory v. Dep't of Motor Vehicles, 84 Wn.2d 568, 527 P.2d 1318 (1974) (concluding due process requires Department to provide driver with full evidentiary hearing before suspending licenses under RCW 46.29.070); State v. Dolson, 138 Wn.2d 773, 982 P.2d 100 (1999) (holding Department violated due process by sending notice of suspension to driver's last known address, rather than driver's address of record as required by statute); cf. Lee, 166 Wn.2d at 583 ("We invalidated a prior set of procedures because drivers were not given any sort of hearing prior to the suspension of licenses [in 2004],

---

[4] Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). In cases involving the potential deprivation of a private interest by the government, we apply the Mathews balancing test to ensure that due process requirements are met. Gourley v. Gourley, 158 Wn.2d 460, 467-68, 145 P.3d 1185 (2006). The three Mathews factors are: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest through the challenged procedures and probable value of additional procedural safeguards; and (3) the government's interest, including the potential burden of additional procedures. Mathews, 424 U.S. at 335.

. . . but we hold that the new procedures . . . meet due process requirements.")
(citing City of Redmond v. Moore, 151 Wn.2d 664, 91 P.3d 875 (2004)).  Though
Johnson urges this court to conduct a Mathews balancing test to determine
whether his due process rights were infringed, doing so would be duplicative; the
Lee court analyzed this same statutory scheme using the Mathews balancing test
and concluded there was no due process violation.  166 Wn.2d at 585-89.

Though Lee concerned civil moving violations, not criminal moving
violations, the same substantial private interest—use of a driver's license—is
present here.  166 Wn.2d at 586.  Moreover, "there is minimal risk that a criminal
defendant will be erroneously deprived of their driver's license," "since a criminal
proceeding which results in a conviction provides sufficient due process."  City of
Redmond v. Bagby, 155 Wn.2d 59, 63-64, 117 P.3d 1126 (2005).  And the
governmental interest is significantly higher in cases involving criminal cases,
since those suspended drivers are " 'more likely to be involved in causing traffic
accidents, including fatal accidents, than properly licensed drivers, and pose a
serious threat to the lives and property of Washington residents.' "  Bagby, 155
Wn.2d at 65 (quoting LAWS OF 1998, ch. 203, § 1).  Thus, the Mathews analysis
in Lee is still applicable here.

Johnson also asserts that Johnson v. City of Seattle involved "identical
circumstances" and should control.  184 Wn. App. 8, 21-22, 335 P.3d 1027
(2014).  In Johnson, Johnson was cited by Seattle for parking too many vehicles
on his single-family lot, in violation of Seattle Municipal Code 23.44.016, even
though he subsequently established a vested right to a legal nonconforming use

9

to park the additional cars on his lot. 184 Wn. App. at 11. This court determined the ordinance violated due process because it prevented Johnson from presenting evidence of his nonconforming use during the fact-finding hearing with the Department of Planning and Development. Johnson, 184 Wn. App. at 20-22. But unlike the fact-finding hearing in Johnson, here the Department's review of mandatory suspensions is administrative and "involves processing paperwork, not fact-finding." Lee, 166 Wn.2d at 588. And Johnson's argument that RCW 46.20.245 impermissibly deprives him of "his right to interpose a legal defense" in violation of due process is unpersuasive. Johnson does not specify what "legal defense[s]" he was deprived of making.

Still, Johnson contends that Lee does not control and urges us to consider a recent Thurston County Superior Court decision—Pierce v. Department of Licensing—as persuasive authority.[5] But we are not bound by a superior court's conclusions of law and decline to consider Pierce.[6]

Lee concerned the same statutory scheme and dictates the outcome of this case. We conclude that Johnson's due process rights were not violated.

---

[5] Pierce v. Dep't of Licensing, No. 20-2-02149-34 (Thurston County Super. Ct., Wash. April 30, 2021). Johnson acknowledges that Pierce is not legal authority and has no precedential value to this court.

[6] We note, however, that the court's ruling in Pierce has since been superseded by statute. See ENGROSSED SUBSTITUTE S.B. 5226, 67th Leg., Reg. Sess. (Wash. 2021) (amending RCW 46.20.289 to remove Department's authority to suspend licenses for non-payment of non-criminal moving violations).

RCW 10.01.160

In his briefing, Johnson asserts that the Department should have conducted its own ability-to-pay hearing and, in the alternative, that the Department's suspension of his license was based on an invalid judgment because the municipal court failed to conduct an ability-to-pay hearing as required by RCW 10.01.160(3). But at oral argument, Johnson took a different stance, contending that the Department must affirmatively state—via a checkbox—that it confirmed the court conducted an adequate ability-to-pay hearing before suspending a license. The Department contends that it performs a purely administrative function and is not authorized to evaluate the sufficiency of the process afforded in a judicial proceeding. We agree with the Department that it is not the appropriate entity from which Johnson can pursue the relief he seeks.

In an administrative review, RCW 46.20.245(b) authorizes the Department to address only the following: "(i) Whether the records relied on by the department identify the correct person; and (ii) Whether the information transmitted from the court or other reporting agency or entity regarding the person accurately describes the action taken by the court or other reporting agency or entity." Former RCW 10.01.160(3) (2015)[7] provides that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them." "To determine the amount and method for paying the costs, 'the court

---

[7] Johnson contends that the Department violated his statutory rights when it suspended his license in February 2018. Accordingly, the version of RCW 10.01.160 in effect at that time applies.

shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.' " State v. Blazina, 182 Wn.2d 827, 838, 344 P.3d 680 (2015) (emphasis omitted) (quoting RCW 10.01.160(3)).

Here, the Department's function and review is purely administrative. See RCW 46.20.245(b). Neither RCW 46.20.245 nor RCW 10.01.160 permit the Department to intervene in court proceedings as Johnson envisions. Therefore, we do not reach, because the Department cannot reach, whether the court properly inquired into Johnson's ability to pay as required by Blazina. Though the record does not reveal whether or not the municipal court conducted an individualized inquiry, this is not the issue before us, and would be properly raised only on direct appeal of the municipal court action. Johnson cannot hold the Department accountable for his failure to object to the court's imposition of LFOs.

The plain language of RCW 10.01.160(3) makes clear that the *court*, not the Department, is tasked with conducting an ability-to-pay inquiry. RCW 10.01.160(3) ("The *court* shall not order a defendant to pay costs. . . . In determining the amount and method of payment of costs . . . , the *court* shall take account of the financial resources of the defendant.") (emphases added). Contrary to Johnson's assertion, the Department has not been granted the authority to ensure whether litigants receive an ability-to-pay hearing before their license is suspended. The Department is not required to provide Johnson another opportunity to assert an inability to pay during an administrative review. Moreover, when Johnson asked the proper entity—the court—to reduce his fees,

it did so immediately. Any delay in receiving relief was solely due to Johnson's own inaction. We conclude that the Department did not violate Johnson's statutory rights under RCW 10.01.160.

We affirm.

Smith, C.J.

WE CONCUR:

Chung, J.        Bremm, J